SIXTH DIVISION 

December 7, 2001

No. 1-00-1341

THE PEOPLE OF THE STATE OF ILLINOIS,

Plaintiff-Appellee, 

v.

GREGORY SMITH,

Defendant-Appellant.

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County

Honorable

Michael B. Bolan,

Judge Presiding.

JUSTICE O’MARA FROSSARD delivered the opinion of the court:

Following a bench trial, defendant Gregory Smith was convicted of first degree murder and sentenced to 20 years in prison.  The judgment was affirmed on direct appeal.  
People v. Smith
, No. 1-97-2853 (1998) (unpublished order under Supreme Court Rule 23).  Defendant filed an initial and an amended petition for post-conviction relief, both of which were prepared by retained counsel.  The trial court summarily dismissed the petition as frivolous and patently without merit.  Defendant contends on appeal that his amended petition stated meritorious claims of ineffective assistance of trial and appellate counsel.

BACKGROUND

Defendant’s conviction arose from the fatal shooting of George Barron on July 3, 1993, in Chicago.  The only eyewitness to testify at trial was Richard Campbell.  According to Campbell, he, Barron, and Antonio Cox were walking on the street when three men approached them.  Campbell recognized one of the men as Ronald Ware.  Ware fled the scene, but one of the men who was with Ware started shooting at Campbell and his companions.  Campbell testified that the shooter was wearing a cream- and black-colored hooded shirt.  He described the shooter’s gun as an automatic, stating that he heard shells hitting the ground.  Campbell testified that the shooter continued toward them, firing the gun.  Eventually, the shooter came within two feet of Barron and shot him in the right temple.  Campbell testified that the third offender simply stood and looked around.  The third man was short and dark-skinned with a mustache, wearing a cream-colored North Carolina “Targets” hooded shirt.  Campbell later identified Ware during a lineup.  He also identified the cream-color North Carolina “Targets” hooded shirt, which was worn by defendant in the lineup.  However, Campbell did not identify defendant as one of the offenders.

Officer John McCann testified that he recovered five 9 millimeter Luger shell casings “a few feet” from Barron’s body.  Officer McCann interviewed Campbell and obtained Ware’s address.  When Officer McCann brought Ware to the station for questioning, Ware implicated defendant and a man named Yaw Appiah.  Officer McCann went to Appiah’s home, where he found Appiah and defendant.  Defendant was taken to the police station, where he was given 
Miranda
 warnings and was advised that he could be charged as an adult.  Defendant’s mother arrived at the police station some time after defendant.  Defendant told Officer McCann that on the night of the shooting, he had taken a gun from his mother’s bedroom because some Folks were going to shoot him.  About 7 p.m. that night, he went to a party where he met Ware and Appiah, who had a black 9 millimeter semiautomatic gun.  Defendant told Officer McCann that Ware, Appiah, and two other men he did not know were talking about going to shoot some Folks.  Defendant gave his gun, which was a .357, to Ware, who handed it to one of the men defendant did not know.  When that man indicated he wanted defendant’s shirt because it had a hood, defendant switched shirts with him.  Defendant told Officer McCann that Ware, Appiah, and the man wearing defendant’s shirt then left the party for about 20 minutes.  When they returned, Appiah told defendant that he wanted to leave.  While they were walking to Appiah’s house, Appiah told defendant that he shot some Folks.  Defendant asked Appiah about his .357 gun, but Appiah did not answer.

Officer McCann testified that he owned a Smith & Wesson .357 Magnum handgun that shot “.38 special, class B” bullets.  McCann explained that a .357 caliber handgun will fire either .38 or .357 caliber bullets.  Officer McCann testified that a few hours after he interviewed defendant, Assistant State’s Attorney Weaver arrived and defendant gave a statement to Weaver that was “substantially the same” as his statement to Officer McCann.

The parties stipulated that if called to testify, Dr. Thamrong Chira would have testified that he performed an autopsy on Barron and cause of death was nine gunshot wounds.  Dr. Chira determined that eight of the nine bullets exited Barron’s body and recovered the remaining bullet from Barron’s spinal cord.  The parties further stipulated that if called to testify, Richard Fournier, a firearms examiner, would have testified that he examined the recovered bullet, determined that it was “a .38 caliber bullet, and he classified it as a .38 special.”

On direct appeal, defendant argued that the evidence was insufficient to prove him guilty of first degree murder on the theory of accountability because it did not establish that defendant’s gun was used in the commission of the offense.  We rejected defendant’s contention and affirmed his conviction.  
People v. Smith
, No. 1-97-2853 (1998) (unpublished order under Supreme Court Rule 23).

In his amended post-conviction petition, prepared by retained counsel, defendant alleged that his trial counsel was ineffective for the following reasons: (1) failed to “run” a motion to suppress defendant’s statement; (2) admitted defendant’s accountability in the opening statement and motion for directed verdict; (3) failed to engage in meaningful adversarial testing of the firearm evidence; that failure included a stipulation that the bullet recovered from the victim was a .38 special; (4) failed to inform defendant of the nature and potential effect of that stipulation; (5) stipulated to the cause of death, failed to engage in meaningful adversarial testing of the medical examiner’s testimony and failed to explore the possibility that if a bullet from defendant’s gun was found in the victim’s body, it was not a cause of death; (6) did not properly inform defendant of the nature and potential effect of stipulating that multiple gunshot wounds were the cause of the victim’s death; (7) caused defendant to involuntarily relinquish his right to testify on his own behalf by telling him that (a) if he testified, his gang affiliation would be brought up and be extremely detrimental to his case; and (b) if he were to testify contrary to what he was claimed to have said in the police reports, it would negatively affect his case; (8) caused defendant to involuntarily relinquish his right to a jury trial by telling defendant that the judge owed him a favor and it would be better to have a bench trial because the judge would have information not available to a jury; (9) failed to engage in meaningful adversarial testing of Officer McCann’s testimony and the State’s evidence regarding defendant’s gun being used in the offense; and (10) provided representation that “constituted nothing more than a sham and farce.”

Defendant also contended in his petition that appellate counsel was ineffective for (1) going forward on appeal without a full transcript of the trial record; (2) failing to raise the issue of plain error regarding Officer McCann’s testimony that a .357 caliber handgun is capable of firing .38 caliber bullets; and (3) failing to raise the issue of ineffective assistance of trial counsel.

Defendant attached a self-executed affidavit and an affidavit executed by his mother in support of the allegations in his petition.  He also attached an affidavit executed by post-conviction counsel.  The trial court dismissed defendant’s petition as frivolous and patently without merit.  Defendant now appeals from the summary dismissal of his petition for post-conviction relief.

ANALYSIS

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 
et seq
. (West 1998)) provides that a defendant may challenge his conviction for violations of federal or state constitutional rights.  
People v. Tenner
, 175 Ill. 2d 372, 377 (1997).  Post-conviction relief is a collateral proceeding, not an appeal from the underlying judgment.  
People v. Evans
, 186 Ill. 2d 83, 89 (1999).  All issues decided on direct appeal are 
res judicata
, and all issues that could have been raised in the original proceeding but were not are waived.  
People v. Whitehead
, 169 Ill. 2d 355, 371 (1996).  There are circumstances under which the waiver rule may be relaxed.  For example, 
res judicata
 and waiver will be relaxed when appropriate under principles of fundamental fairness.  
People v. Holman
, 191 Ill. 2d 204, 210 (2000).  The waiver rule is relaxed where the alleged waiver stems from the incompetence of appellate counsel.  
Whitehead
, 169 Ill. 2d at 371.  If a claim of ineffective assistance of counsel is based on matters outside the record, then it could not have been raised on appeal and, consequently, is not waived in a post-conviction petition.  
People v. Owens
, 129 Ill. 2d 303 (1989).

The Act establishes a three stage process for adjudicating a petition for post-conviction relief.  725 ILCS 5/122-1 
et seq
. (West 1998).  This case was before the trial court at the first stage of the post-conviction process.  We rely on the language of the Act for purposes of defining the first stage pleading standard.  A defendant may proceed under the act by alleging “that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the constitution of the United States or of the State of Illinois or both.”  725 ILCS 5/122-1 (West 1998).  A petition filed under the Act must “clearly set forth the respects in which petitioner’s constitutional rights were violated.”  725 ILCS 5/122-2 (West 1998).  The petition shall have attached “affidavits, records or other evidence supporting its allegations or shall state why the same are not attached.”  725 ILCS 5/122-2 (West 1998).

At the first stage, the Act does not permit any further pleadings from the defendant or any motions or responsive pleadings from the State.  
People v. Gaultney
, 174 Ill. 2d 410, 418 (1996).  The trial court is not to consider the petition on the merits, rather, it is to consider the petition independently, without any input from either side.  
Gaultney
, 174 Ill. 2d at 418.  At the first stage of a post-conviction proceeding, the circuit court determines whether the petition 
alleges
 a constitutional infirmity which would necessitate relief under the Act.  
People v. Coleman
, 183 Ill. 2d 366, 380 (1998).
  The first stage presents a pleading question
.  Unless positively rebutted by the record, all well-pled facts are taken as true at this stage and the trial court’s determination is subject to 
de novo
 review.  
Coleman
, 183 Ill. 2d at 388-89.  Substantive questions relating to the issues raised in the petition are not to be addressed at the first stage of the post-conviction proceeding.  
People v. Topps
, 309 Ill. App. 3d 813, 819 (1999).

Section 5/122-2.1 of the Act directs the trial court to conduct a threshold evaluation of the allegations pled in post-conviction petitions and to dismiss those which are “frivolous” or “patently without merit.”  The Act provides: “If the petitioner is sentenced to imprisonment and the court determines the petition is frivolous or is patently without merit, it shall dismiss the petition in a written order, specifying the findings of fact and conclusions of law it made in reaching its decision.”  725 ILCS 5/122-2.1(a)(2) (West 1998).  “In considering a petition pursuant to this Section the court may examine the court file of the proceeding in which the petitioner was convicted, any action taken by an appellate court in such proceeding and any transcripts of such proceeding.”  725 ILCS 5/122-2.1(c) (West 1998).  Those records should be examined to determine whether the allegations are positively rebutted by the record.  That determination will assist the trial court in resolving the issue as to whether the petition is frivolous or patently without merit.  We are mindful that this case is reviewed by this court at the first stage of the post-conviction process.  Based on the procedural posture of this case, the relevant question is  whether the petition is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 1998); 
People v. Edwards
, 197 Ill. 2d 239, 244, 246-47 (2001).  Whether the petition and any accompanying documents make a substantial showing of a constitutional violation is a second stage inquiry.  
Edwards
, 197 Ill. 2d at 245-46.  If at the second stage a substantial showing of a constitutional violation is set forth, the petition is advanced to the third stage for an evidentiary hearing.  725 ILCS 5/122-6 (West 1998); 
Gaultney
, 174 Ill. 2d at 418.

I.  Ineffective Assistance of Trial Counsel

Defendant contends on appeal that his petition stated a meritorious claim of ineffective assistance of trial counsel.
  The petition pled ten separate allegations of ineffective assistance of trial counsel in detail.  The State argues that because defendant did not raise this issue on direct appeal, it is waived.  However, defendant also alleged ineffective assistance of appellate counsel including appellate counsel’s failure to raise the issue of ineffective assistance of trial counsel.  As we have previously noted, the waiver rule may be relaxed where the facts relating to the claim do not appear in the original appellate record, where the defendant’s arguments are based on the incompetency of the original appellate counsel, or where fundamental fairness so requires.  We review defendant’s claim that he received ineffective assistance of trial counsel based on these recognized exceptions to the waiver rule.  
Holman
, 191 Ill. 2d at 210; 
People v. Tooles
, 177 Ill. 2d 462, 464-65 (1997); 
Whitehead
, 169 Ill. 2d at 271.

In 
Strickland v. Washington
, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984), the United States Supreme Court set forth the following two-prong test to determine whether a defendant has been denied effective assistance of counsel: (1) the defendant must show that counsel’s representation fell below an objective standard of reasonableness, and (2) the defendant must show that the deficient performance prejudiced the defense.  
Strickland
, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  The defendant must overcome a “strong presumption” that his counsel’s conduct falls within the wide range of reasonable professional assistance and that the challenged conduct constitutes sound trial strategy.  
Strickland
, 466 U.S. at 689, 80 L. Ed. 2d at 694-95, 104 S. Ct. at 2065
.  If the ineffectiveness claim can be disposed of on the basis that the defendant did not suffer sufficient prejudice, a court need not consider whether counsel’s performance was deficient.  
Strickland
, 466 U.S. at 697, 80 L. Ed. 2d at 699, 104 S. Ct. at 2069
; 
People v. Hall
, 157 Ill. 2d 324, 337 (1993).  Mindful that we are reviewing the trial court’s dismissal of a first stage post-conviction petition, we address each of defendant’s allegations of ineffectiveness of counsel.  Whether we find the allegations of ineffective assistance meritorious, not frivolous, and not positively rebutted is determined by a close review of the record.

A.  Motion to Suppress Statements

Defendant asserts that although his trial counsel filed a motion to suppress statements, he failed to litigate the motion.  Defendant argues that his statement to the police was involuntary, and  if the motion had been litigated, it would have likely succeeded.  Defendant contends that because the only evidence directly connecting him to the murder was his statement, its suppression would have prevented the State from prosecuting him for murder.  Finally, defendant asserts that because “[t]here was no downside to running the motion,” trial counsel’s failure to do so “evidence[d] no conceivable trial strategy.”

Defendant indicated in his petition that he was 15 years old at the time he was arrested and interrogated, and asserted that he was never surrendered to a juvenile officer.  Defendant alleged that he was interrogated for approximately 10 minutes before his mother arrived at the police station.  According to his mother’s affidavit, she learned of defendant’s arrest through a codefendant’s mother, and by the time she arrived at the police station, the police had already begun interrogating her son.  Defendant’s mother also stated that at the time of his arrest, defendant was “very impressionable and would quickly acquiesce to any show or display of authority.”  She indicated that defendant’s acquiescence in giving his statement to the police “was due to his young age, lack of experience with the court system, natural tendency to submit to authority, marginal intelligence and the deception by the officers involved in his interrogation that his ‘confession’ would lead to his not being charged with the murder.”  Both defendant and his mother asserted in their affidavits that Officer McCann led them to believe that if defendant cooperated, he would not be charged.  According to the affidavit executed by defendant’s post-conviction counsel, trial counsel’s reason for not litigating the motion to suppress was because defendant’s testimony at a hearing on the motion “would be ‘inconsistent’ with the police reports.”

At trial, Officer McCann testified that he and his partner arrested defendant and codefendant Yaw Appiah at Appiah’s house.  While Officer McCann and his partner were still at Appiah’s house, Appiah’s mother called defendant’s mother, and informed her that the police were taking her to the police station with their sons.  Appiah’s mother asked defendant’s mother come to the station.  Appiah’s mother accompanied her son and defendant to the station.

At the time of his arrest, defendant was 15 years old and had no prior contact with the criminal justice system.  The record confirms that defendant’s mother arrived at the police station some time after defendant, but does not reveal how much later.  Officer McCann’s testimony that defendant’s mother was present when he questioned defendant around 9:15 p.m. and that she was present also at 1 a.m. when the assistant state’s attorney questioned defendant does not affirmatively establish that she was present during the earlier points of the interview as alleged in the petition.  At this point in the proceeding the record does not positively rebut the allegation that defendant’s mother was not present when the interrogation began and was not allowed to consult with defendant before the interrogation.

The opportunity to advise and counsel a juvenile before interrogation begins is a significant factor in determining whether a confession was given voluntarily.  
In re Lashun H.
, 284 Ill. App. 3d 545, 553 (1996).  Procuring an incriminating statement from a juvenile in the absence of counsel requires great care to assure that the statement was not suggested or coerced, and not the product of ignorance, fright, or despair, particularly since the coerciveness of the situation is enhanced when a juvenile is involved.  
Lashun H.
, 284 Ill. App. 3d at 550.  The presence or absence of a parent is a factor to consider when determining the voluntariness of a confession; however, there is no 
per se
 rule that a parent or guardian be present.  
People v. Gardner
, 282 Ill. App. 3d 209, 218 (1996).  Conduct by law enforcement personnel that undermines the ability of a parent or concerned adult to confer with a juvenile before questioning is a significant factor in determining whether a confession was given voluntarily.  
Lashun H.
, 284 Ill. App. 3d at 553.  The relevant inquiry is whether the absence of a parent or other adult interested in the juvenile’s welfare contributed to the coercive circumstances of the interview.  
In re A.R.
, 295 Ill. App. 3d 527, 533 (1998).

Additionally, while the absence of a juvenile officer at the time of defendant’s confession does not 
per se
 make the statement involuntary, it is a material factor.  See 
A.R.
, 295 Ill. App. 3d at 533, 535.  Here, the record reflects no youth officer was present.  We note that where the State failed to take appropriate steps to ensure that a juvenile defendant had an opportunity to confer with an interested adult, either a parent or a youth officer, we have held that the police conduct rendered the confession inadmissible.  See 
People v. R.B.
, 232 Ill. App.3d 583, 593 (1992).

In considering whether a statement has been voluntarily given our court looks at the “totality of the circumstances.”  
In re G.O.
, 191 Ill. 2d 37, 54 (2000).  Voluntariness is determined by whether the statement was made freely, voluntarily and without compulsion or inducement of any sort, or whether the defendant’s will was overcome at the time of the confession.  
People v. Miller
, 173 Ill. 2d 167, 181 (1996).  Factors to consider include the age, education, intelligence, duration of the interrogation, 
Miranda
 warnings, and evidence of physical threats or punishment.  
Schneckloth v. Bustamonte
, 412 U.S. 218, 226, 36 L. Ed. 2d 854, 862, 93 S. Ct 2041, 2047 (1973).
  Further, relevant factors regarding voluntariness include emotional characteristics, previous experience with the criminal justice system, promises of leniency, and whether the confession was induced by police deception.  
People v. MacFarland
, 228 Ill. App. 3d 107, 117 (1992).  Here, the petition alleges that during the course of the interrogation, Officer McCann led defendant and his mother to believe that if he would admit involvement in the shooting, he would not be charged.  The allegation that police deception was used to induce the confession was not rebutted by the record.

We further note that defendant’s trial counsel did in fact file a motion to suppress statements. Although trial counsel did not pursue the motion, the act of filing indicates that at one point in time, trial counsel believed there was justification for such a motion.  Trial counsel ordered transcripts of proceedings that covered seven dates from January 22, 1997 through June 19, 1997.  The record of 36 additional court dates from August 18, 1993 through November 20, 1996 was not ordered.  Pretrial matters, including withdrawing the motion to suppress, were disposed of during that time period.
  Petitioner alleges the record which was not ordered by trial counsel “would have included information on why petitioner’s trial counsel would have withdrawn the motion to suppress statements.”  The question before us is not whether defendant’s statement to the police was voluntary.  At this stage of the process the question is whether the petition clearly sets forth a violation of petitioner’s constitutional rights by alleging ineffective assistance of counsel for failure to litigate the motion to suppress.

Here, it is not rebutted by the record that the coercive nature of the juvenile defendant’s encounter with the police began immediately at Appiah’s home where Officer McCann took defendant into custody and transported him in a squad car to the station.  The petition alleges that for ten minutes defendant was interrogated outside the presence of his mother.  It is uncontested by this record that the police did not notify defendant’s mother.  She learned of defendant’s arrest from Appiah’s mother.  Based on this record, defendant had no previous contact with the police.  The intimidation inherent in this type of encounter was not mitigated by defendant’s previous life experience.  Nothing in the record indicates any prior experiences which would have given defendant the sophistication or insight as to how to conduct himself while being interrogated by the police in a murder case.

The record does not rebut the allegation that defendant was interrogated for approximately 10 minutes before the arrival of his mother, during which time Officer McCann told defendant that he would not be charged if he cooperated with the police and admitted to his involvement in the murder.  This record does not rebut the allegation in the petition that defendant gave a statement to the police as the result of “his young age, lack of experience with the court system, natural tendency to submit to authority, marginal intelligence and the deception by the officers involved in his interrogation that his ‘confession’ would lead to his not being charged with the murder.”

For the reasons previously discussed, it is reasonable to conclude that after filing a motion to suppress statements, an attorney rendering effective assistance would have continued the effort to suppress defendant’s statements on the basis that the confession was not voluntary.  If counsel had succeeded in suppressing the statements, the trial court would not have had a factual basis for the accountability theory under which defendant was found guilty of murder.  Trial counsel’s alleged reason for not pursuing the motion to suppress – because defendant’s testimony at a hearing on such a motion “would be ‘inconsistent’ with that which was in the police reports” – does not demonstrate trial strategy.  It is to be expected that the State and the defense would offer conflicting evidence on voluntariness.  If trial counsel’s explanation is accepted as sound trial strategy there would be no basis to litigate any criminal motion.  Witnesses for the State and the defense regularly contradict each other.  Here, where the only evidence directly connecting defendant to the murder was his statement we cannot say that the failure to litigate the motion to suppress was reasonable strategy which did not affect the outcome of the trial.

Summary dismissal at the first stage of the post-conviction process based on allegations of ineffective assistance of counsel for failure to litigate the motion to suppress was not warranted.  The allegations are not positively rebutted by the record.  
Coleman
, 183 Ill. 2d at 385.  These allegations are neither frivolous nor patently without merit.  Regarding these allegations, the petition should advance to the second stage of the post-conviction process.

B.  Right to Testify

Defendant contends that trial counsel was ineffective for causing him to involuntarily waive his right to testify by incorrectly advising him regarding this right.  In his affidavit, defendant asserted that he relied upon trial counsel’s advice in deciding whether to testify; that trial counsel persuaded him to give up his right to testify; and that trial counsel informed him that if he testified, his gang involvement would come out, but that it would not come out if he did not testify.  Defendant further alleged that trial counsel informed him that if he testified contrary to what he supposedly said in the police reports, it would negatively affect his case; and that trial counsel never explained the right to testify in detail, but only discussed it “briefly on two or three occasions shortly before trial.”  Defendant’s mother made the same assertions in her affidavit.

Ultimately, the decision whether to testify belongs to the defendant.  
People v. Enis
, 194 Ill. 2d 361, 399 (2000).  It is generally recognized that a defendant’s prerogative to testify is a fundamental right, which only the defendant may waive; whether to exercise that right is not one of those matters which is considered a strategic or tactical decision best left to trial counsel.  
Jones v. Barnes
, 463 U.S. 745, 751, 77 L. Ed. 2d 987, 993, 103 S. Ct. 3308, 3312
 (1983); 
People v. Madej
, 177 Ill. 2d 116, 146 (1997).  However, the decision whether to take the stand and testify should be made with the advice of counsel.  
People v. Smith
, 176 Ill. 2d 217, 235 (1997).

Defendant claims that trial counsel’s advice to him regarding testifying was incorrect.  Defendant’s gang affiliation was introduced into the case despite his silence at trial; therefore, trial counsel’s alleged advice that defendant’s gang involvement would not come out if defendant did not testify was erroneous.  With this erroneous advice trial counsel allegedly provided ineffective assistance and caused defendant to waive his right to testify.  At this point, we need not determine whether defendant would be entitled to relief on this claim.  Instead, the question is whether the allegation that defendant’s trial counsel was constitutionally ineffective for advising him not to testify based on erroneous legal analysis was frivolous, patently without merit, and rebutted by the record.

The State concedes in its brief, “Certainly, if defendant had testified, his gang affiliation would have been exposed with detailed scrutiny under cross examination.”  However, the State contends the dismissal of the petition should be affirmed because “it is not likely that defense counsel told defendant that his gang affiliation would not come out as defendant admitted his affiliation in his statement.”  That argument is pure speculation, not supported by the record and directly contradicted by the allegations in the record.  The State completely ignores the applicable test regarding summary dismissal, which is whether defendant’s allegations are frivolous, patently without merit and rebutted by the record.

The alleged erroneous advice failed to satisfy the objective standard of reasonableness required by the first prong of the 
Strickland
 test.  Under the second prong of the 
Strickland
 test, the record does not reflect a reasonable likelihood that defendant would not have waived his right to testify absent the erroneous legal advice.  See, 
e.g.
, 
People v. Seaberg
, 262 Ill. App. 3d 79, 83-84 (1994) (even though defendant did not state the nature or substance of his intended testimony, appellate court reversed summary dismissal of defendant’s claim that he would have testified but for his attorney’s erroneous advice); 
People v. Lester
, 261 Ill. App. 3d 1075, 1079-80 (1994) (without consideration of the substance of defendant’s potential testimony, appellate court reversed summary dismissal of defendant’s claim that his attorney misled him into not testifying).

Whether defendant would be entitled to relief on this post-conviction claim is a separate matter not before the trial court at this initial stage.  Substantive questions relating to the issues raised in the petition are not to be addressed at the first stage of the post-conviction proceeding.  The test is whether defendant’s alleged deprivation of his constitutional rights is positively rebutted by the record.  Defendant’s allegations of ineffective assistance of counsel based on erroneous advice which misled him into waiver of his right to testify is not positively rebutted by the record.  
Coleman
, 183 Ill. 2d at 85.  Summary dismissal is not warranted because the petition’s allegations of fact are not frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2) (West 1998).  Regarding this issue, the petition should advance to the second stage of the post-conviction process.

C.  Right to Jury Trial

Defendant contends that trial counsel was ineffective for causing him to waive his right to a jury trial by advising him that a bench trial would be better because the judge owed trial counsel a favor and the judge would have information not available to a jury.  The State argues that because defendant did not raise this issue on direct appeal, it is waived.  We reject that argument because defendant’s petition alleges that appellate counsel was ineffective for failing to raise the issue of ineffective assistance of trial counsel.  We are mindful of the importance of the right to a jury trial, and fundamental fairness further supports our decision to review defendant’s claim.  
Holman
, 191 Ill. 2d at 210.

Defendant argues that trial counsel was ineffective because the advice he received from his trial counsel regarding whether to waive his right to a jury trial was erroneous.  Under the first prong of the 
Strickland
 test, the appropriate inquiry is whether trial counsel’s advice fell below an objective standard of reasonableness.  
Strickland
, 466 U.S. at 688, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064.  Under the
 second prong, we must determine whether there exists a reasonable likelihood that defendant would not have waived his right to a jury trial in the absence of the alleged error.  
People v. Maxwell
, 148 Ill. 2d 116, 142 (1992) (adapting 
Strickland
 test to claim of ineffective assistance involving waiver of jury for purposes of capital sentencing hearing).  There is a strong presumption that the defendant’s representation fell within a wide range of reasonable professional assistance, and that the challenged conduct might be considered sound trial strategy.  
People v. Giles
, 209 Ill. App. 3d 265, 269 (1991).

The right to a trial by jury is fundamental to the American criminal justice system.  
Duncan v. Louisiana
, 391 U.S. 145, 149, 20 L. Ed. 2d 491, 496, 88 S. Ct. 1444, 1447 (1968).  Both the United States Constitution and the Illinois Constitution provide for jury trials in criminal cases.  U.S. const. amends. VI & XIV; Ill. Const. 1970, art. I, §§ 8, 13.  Section 103-6 of the Code of Criminal Procedure provides that every person accused of a crime has the right to a jury trial unless that right is “understandingly waived by the defendant in open court.”  725 ILCS 5/103-6 (West 1998).  The determination of whether this right has been validly waived does not rest on any precise formula, but rather turns on the facts of each particular case.  
People v. Frey
, 103 Ill. 2d 327, 332 (1984). Ultimately, the decision whether to waive a jury trial belongs to the defendant.  
People v. Segoviano
, 189 Ill. 2d 228, 240 (2000).

The Illinois Supreme Court has not specifically required that the record “ ‘affirmatively

establish that the court advised defendant of his right to a jury trial and elicited his waiver of that right [citation], nor that the court or counsel advised defendant of the consequences of the waiver.’ ”  
People v. Dockery
, 296 Ill. App. 3d 271, 276 (1998), quoting 
Frey
, 103 Ill. 2d at 332.  The Illinois Supreme Court has concluded that if a defendant is present when the court and defense counsel discuss a jury trial waiver and the defendant does not object to the waiver, the defendant is deemed to have acquiesced in the waiver.  
People v. Sailor
, 43 Ill. 2d 256, 260 (1969).

However, the Illinois Supreme Court has also recognized the duty imposed on the courts “of ensuring that a defendant’s waiver of his right to a jury trial be made expressly and understandingly.”  
People v. Smith
, 106 Ill. 2d 327, 334 (1985).  We review defendant’s jury waiver in this case based on whether the record reflects the waiver was made expressly and understandingly, thereby positively rebutting defendant’s allegation that trial counsel caused him to waive jury by advising him that the judge owed him a favor and would have information not available to the jury.

At this stage of the proceeding all well pled facts are to be taken as true unless positively rebutted by the record.  
Coleman
, 183 Ill. 2d at 185.  The reasons for waiving a jury, as alleged by defendant, would not constitute valid grounds for choosing to waive a jury.  When defense counsel informs the court that his client waives a jury, it is the professional responsibility of defense counsel to insure that the waiver is knowingly and understandingly consented to by his client.  By allegedly advising defendant that it would be better to take a bench because the judge owed him a favor and would have information not available to the jury, trial counsel would have been acting in a professionally unreasonable manner.  Therefore, defendant has sufficiently alleged facts to establish deficient performance by trial counsel under the first prong of the 
Strickland
 test.  Under the second prong we find a reasonable likelihood that defendant would not have waived his right to a jury trial in the absence of the alleged deficient performance and erroneous advice of trial counsel.  See 
Maxwell
, 148 Ill. 2d at 142.  Therefore, defendant has sufficiently alleged facts to demonstrate the prejudice prong of the 
Strickland
 test.  
Maxwell
, 248 Ill. 2d at 142.

The trial judge did not address these allegations in his written order dismissing the petition. 
The trial court’s admonitions, together with defendant’s signature on the jury waiver do not rebut the specific allegations in the petition.  At no time during the admonition did the trial judge ask the defendant whether he had been promised anything in exchange for giving up his right to a jury trial.  Trial counsel’s alleged representation that the judge would have information not available to the jury is legally inaccurate, as the law is clear that a judge is presumed not to consider inadmissible matters.

In the context of the ineffective assistance claim, the issue to be determined is whether the advice given defendant prevented defendant from waiving his constitutional right to a jury trial voluntarily, knowingly, and understandingly.  Defendant’s allegations that trial counsel persuaded him to take a bench trial by promising that he had influence over the judge because the judge owed him a favor and that the judge would have more information in a bench trial are not rebutted by the record.  Those allegations are neither frivolous nor patently without merit.  While we take no position on defendant’s ability to prove his ineffective assistance claim, we find his petition should advance to the second stage of the post-conviction process.

D.  Meaningful Adversarial Testing of State’s Case

Defendant contends that trial counsel was ineffective because he abandoned his defense by failing to subject the prosecution’s case to any meaningful adversarial testing in the following ways: (1) admitting defendant’s accountability in the opening statement and the motion for directed verdict; (2) agreeing to incriminating stipulations; and (3) not challenging Officer McCann’s testimony that a .357 Magnum handgun can fire .38 special bullets.  Relying on 
People v. Hattery
, 109 Ill. 2d 449 (1985), defendant argues that because there was no effective representation by counsel in his case, prejudice may be presumed to have resulted from counsel’s unprofessional errors and therefore, we need not apply the two-pronged 
Strickland
 test.

In 
Hattery
, defense counsel conceded his client’s guilt to murder charges in the opening statement, did not introduce any evidence at trial, and did not make a closing argument to the jury.  
Hattery
, 109 Ill. 2d at 458-59.  Counsel in 
Hattery
 “completely and unequivocally conceded defendant’s guilt” (
People v. Williams
, 192 Ill. 2d 548, 566 (2000)) and acted “as a proponent for the prosecution” (
People v. Shatner
, 174 Ill. 2d 133, 146 (1996)).  In contrast, here, trial counsel  extensively cross-examined State witnesses, introduced exhibits, argued at length in favor of a directed verdict, presented a closing argument during which he forcefully argued that defendant should be found not guilty, and argued a motion for a new trial or to vacate the finding of guilt.  Defense counsel conceded what defendant had admitted to the police.  However, he argued that defendant’s statement was not sufficient evidence of guilt under a theory of accountability.  Accordingly, the two-pronged 
Strickland
 test supplies the proper standard in this case.  
Williams
, 192 Ill. 2d at 566-67.

1.  Opening Statement and Motion for Directed Verdict

Defendant argues that during the opening statement and argument for directed verdict, trial counsel admitted defendant’s accountability for Barron’s murder.  Defendant asserts that trial counsel’s arguments were contrary to the testimony presented at trial that only one gun – an automatic – was fired at Barron.  He also argues that counsel’s statements subverted any argument against accountability and thus constituted an abandonment of defendant’s case.  The portions of the opening statement to which defendant objects are as follows:

“As far as the evidence is, there were at least two guns that were potentially involved in shooting Mr. Barron.  ***  We know that at least four people left the presence of -- or four people left the presence of [defendant] saying they were going to shoot some Folks.  ***  You will hear no evidence whatsoever that a gun, a .357 which [defendant] gave to one of the individuals had anything whatsoever to do with the killing.  ***  The bottom line is that you had a 15-year-old kid who has made some stupid choices four years ago.”

Defendant objects to the following statements made by trial counsel during argument for directed verdict: “I think it’s reasonable to believe that all three of the characters out on the street had weapons,” and “[D]id [defendant] stupidly encourage these people?  You bet he did; of course, he did.”

Defendant presents trial counsel’s statements out of context.  A full reading of trial counsel’s arguments reveals that he sought to show that defendant’s .357 gun was not used during the shooting by asserting that the only guns used to shoot Barron were a 9 millimeter and a .38 special and that there was no evidence that defendant’s gun was loaded with .38 caliber ammunition.  Defense counsel sought to convince the trial court that the evidence was insufficient to prove defendant guilty of murder beyond a reasonable doubt under a theory of accountability
.  While this strategy was ultimately unsuccessful, it was nonetheless reasonable strategy.  Based on the record, we cannot say  the trial court erred in finding frivolous and patently without merit defendant’s allegations that trial counsel’s opening statement and argument for directed verdict failed to subject the State’s case to meaningful adversarial testing.  These allegations are rebutted by the record.

2.  Stipulations

Defendant argues that trial counsel was ineffective for entering into  two stipulations.  First, defendant asserts that when counsel stipulated that the bullet  recovered from Barron’s body was a .38 special caliber bullet, he allowed the inference that defendant’s gun was used during the shooting.  Second, defendant alleges that by stipulating that the cause of death was multiple gunshot wounds, trial counsel allowed the inference that a bullet fired from defendant’s gun was the cause of Barron’s death.  Defendant contends counsel was ineffective for failing to inform defendant of the nature and effect of these stipulations.  Defendant maintains that these topics were not appropriate for stipulations because they were not foundational issues.

The mere use of stipulations does not establish ineffective assistance of counsel.  
People v. Coleman
, 301 Ill. App. 3d 37, 46 (1998).  An incorrect or erroneous stipulation may establish the first prong of the 
Strickland
 test.  See 
Coleman
, 301 Ill. App. 3d at 47; 
People v. Shepherd
, 242 Ill. App. 3d 744, 748 (1993).  However, in order to establish that counsel was ineffective for entering into a stipulation, a defendant must still satisfy the prejudice prong of 
Strickland
 and overcome the strong presumption that counsel’s actions arose from trial strategy.  See 
Coleman
, 301 Ill. App. 3d at 47; 
Shepherd
, 242 Ill. App. 3d at 748.

Here, trial counsel’s stipulations were not incorrect or erroneous.  Trial counsel may have considered the stipulations to be preferable to the possibility of lengthy and detailed testimony from the medical examiner and the firearms examiner, which could have highlighted the stipulated evidence and made it appear more important than it was.  See 
People v. Penrod
, 316 Ill. App. 3d 713, 725 (2000).  Moreover, defense counsel argued that there was no evidence that defendant’s .357 caliber handgun was loaded with .38 caliber bullets.  Based on the record we cannot conclude that the trial court erred in finding frivolous and patently without merit defendant’s allegations that trial counsel was ineffective for entering into the previously discussed stipulations.

3.  Testimony of Officer McCann

Defendant alleges trial counsel failed to engage in meaningful adversarial testing of the State’s evidence that defendant’s gun was used in the offense.  Defendant argues that trial counsel was ineffective when he failed to object to the relevancy of or require the State to lay a foundation for Officer McCann’s opinion that a .357 Magnum handgun is capable of firing .38 caliber special bullets.  That approach left the conclusion that defendant’s gun was used in the shooting unchallenged.  Defendant suggests that trial counsel should have inquired whether the bullet in fact recovered from Barron’s body could have been fired from a .357 Magnum handgun or a 9 millimeter automatic, and whether a 9 millimeter gun could fire a .38 caliber bullet.  Defendant asserts that by failing to challenge Officer McCann’s opinion, trial counsel in effect “stipulated” to testimony that was crucial in linking defendant with Barron’s murder.  Further, defendant argues that lack of investigation and cross-examination on this issue constituted an abandonment of the case by trial counsel.

The significance of the evidence regarding the firing capabilities of a .357 magnum handgun was recognized in our original Rule 23 Order which affirmed the defendant’s murder conviction.  We indicated that “Although there was no conclusive evidence that the bullet recovered was in fact fired from defendant’s handgun, the evidence concerning the capabilities of a .357 Magnum, when considered together with the other evidence of defendant’s involvement in this offense, tends to establish that the .38 special caliber bullet found in the victim’s body was fired from defendant’s gun.”  Moreover, it was the testimony of Officer McCann which provided evidence that a .357 Magnum handgun was capable of firing .38 caliber bullets.  On appeal in support of the theory that the evidence was insufficient to prove defendant guilty beyond a reasonable doubt, appellate counsel argued that Officer McCann’s testimony that a .357 Magnum handgun was capable of firing .38 caliber bullets was not probative of the issue because the testimony was irrelevant and McCann was never qualified as an expert.  McCann’s testimony that the .38 special bullet recovered from the murder victim’s body could be fired from the gun which in his statement defendant admitted he gave to Ronald Ware so he could go shoot some rival gang members was crucial evidence corroborating defendant’s statement and connecting defendant to the murder.

In reviewing the post-conviction petition, the trial judge concluded that defendant’s argument regarding the failure of trial counsel to object to McCann’s testimony was raised on appeal and therefore the trial judge refused to consider this allegation based on 
res judicata
.  While appellate counsel attempted to argue this issue on appeal, we did not address the merits of the argument because we found that “defendant waived his objection to the admission of this evidence by failing to object to the testimony at trial and failing to raise the issue in a post-trial motion.”  Therefore, rejection of this allegation by the trial judge based on 
res judicata
 was error.  We did not address the merits of this issue on appeal precisely because trial counsel failed to object to McCann’s testimony at trial and failed to raise the issue in a posttrial motion.

This record does not positively rebut the allegation that trial counsel’s failure to cross-examine or object to Officer McCann’s testimony was not reasonable trial strategy.  If counsel had succeeded in challenging this evidence, the trial court would not have had corroboration for the defendant’s incriminating statement.  Moreover, based on this record we cannot say that defendant was not prejudiced by trial counsel’s failure to challenge Officer McCann’s qualifications or testimony.
  Summary dismissal of the petition in the context of ineffective assistance of counsel for failure to challenge this testimony was not warranted.  The allegations are neither frivolous nor patently without merit. Regarding these allegations the petition should advance to the second stage of the post-conviction process.

E. Representation By Defense Counsel Was a Sham

Defendant contends that representation by defense counsel was a sham and a farce.  In support of that argument he attaches an affidavit executed by post-conviction counsel alleging trial counsel’s failure to investigate.  In his affidavit, post-conviction counsel stated that defendant’s trial counsel told him that he (1) conducted no investigation for defendant’s case; (2) did not speak with the medical examiner regarding whether the bullet found in the victim’s body was the cause of death; (3) did not discuss with the firearms examiner the basis for his identification of the bullet as a .38 caliber bullet, as he had known the examiner from “way back” and accepted his opinion on that basis; (4) did not pursue a motion to suppress statements because defendant’s testimony at such a motion “would be ‘inconsistent’ with that which was in the police reports”; and (5) did not order transcripts before January 21, 1997 because those proceedings consisted of routine continuances.

Whether defense counsel’s failure to investigate is ineffective assistance is determined by the value of the evidence which was not presented at trial and the closeness of the evidence that was presented.  
People v. Dillard
, 204 Ill. App. 3d 7, 10 (1990).  
In 
People v. House
, 141 Ill. 2d 323, 386 (1990), trial counsel failed to investigate evidence which would have established the foundation for testimony that the victim described someone other than defendant at the scene.  Based on the closeness of the evidence, the Illinois Supreme Court found that the failure to conduct such investigation and present evidence was ineffective assistance of counsel which likely affected the outcome of the case.  
House
, 141 Ill. 2d at 386.  In 
People v. Garza
, 180 Ill. App. 3d 263 (1989), we found ineffective assistance of counsel which was outcome determinative when defense counsel failed to call alibi witnesses or to elicit inconsistencies from the state’s only eyewitness who linked defendant to the crime.

At this point in the proceeding we conclude that defense counsel’s representation, as alleged, falls below the objective standard of reasonableness required under the first prong of the 
Strickland
 test.  The firearms evidence as developed through Officer McCann’s testimony together with the defendant’s statement were critical in linking defendant to the murder.  Based on this record we cannot say the alleged failure by trial counsel to investigate these matters was not prejudicial.  
For the reasons previously discussed, the record does not positively rebut defendant’s claims that his trial counsel was ineffective.  
Coleman
, 183 Ill. 2d at 385.  These allegations are not frivolous or patently without merit.  Therefore the case should advance to the second stage of the post-conviction process.

II.  Ineffective Assistance of Appellate Counsel

Defendant contends that his petition stated a meritorious claim that appellate counsel was ineffective for proceeding without a complete transcript from the trial court, failing to raise the issue of ineffective assistance of trial counsel, and failing to raise the issue of plain error with regard to Officer McCann’s testimony.  The two-pronged 
Strickland
 test applies to claims of ineffective appellate counsel.  
People v. Caballero
, 126 Ill. 2d 248, 269-70 (1989).  A defendant who claims that appellate counsel was ineffective for failing to raise an issue on appeal must allege facts showing such failure was objectively unreasonable and that counsel’s decision prejudiced defendant.  
Enis
, 194 Ill. 2d at 377.  Unless the underlying issue has merit, a defendant cannot be considered to have suffered prejudice from appellate counsel’s failure to brief that issue.  
People v. Childress
, 191 Ill. 2d 168, 175 (2000).

For the reasons previously discussed, the meritorious underlying allegations that appellate counsel should have raised on direct appeal regarding ineffective assistance of trial counsel include the following: (1) the failure to litigate the motion to suppress the statement; and (2) the failure to engage in meaningful adversarial testing of Officer McCann’s testimony and the firearms evidence that linked defendant to the murder.  At this stage of the proceeding we conclude that the failure to raise these issues on direct appeal was objectively unreasonable.  
Caballero
, 126 Ill. 2d at 269-70.  If appellate counsel had raised these issues on direct appeal we cannot say there is no reasonable probability that the result of the appeal would have been different.  
Caballero
, 126 Ill. 2d at 269-70.

Moreover, the facts surrounding these issues are contained in the trial record which appellate counsel had the responsibility to review for purposes of appeal.  Defendant alleged that he was denied his right to effective assistance of appellate counsel in that appellate counsel represented defendant without a full transcript of the trial record.  Regarding that allegation the trial court concluded in its written order, “In this case, this court does not consider appellate counsel’s failure to order a full transcript unreasonable and/or prejudicial conduct, especially since appellate counsel was also the trial counsel and was presumably well versed with the facts of the case.”  The court further stated when addressing the issue of ineffective assistance of trial counsel that “since the same attorney who handled the trial also handled the appeal, the issues of ineffective assistance of trial counsel will be examined in the context of the ineffective assistance of appellate counsel claim.”  This factual basis for the trial court’s rejection of the allegations of ineffective assistance of trial and appellate counsel was in error.  Trial and appellate counsel were 
not
 the same.  Trial counsel was a private attorney and appellate counsel was the Cook County Public Defender’s Office.

The trial court erred in summarily dismissing defendant’s petition.  The allegations that appellate counsel was ineffective for failing on direct appeal to pursue trial counsel’s ineffective assistance regarding litigating the motion to suppress and challenging the firearms evidence are neither frivolous nor patently without merit.  These allegations are not positively rebutted by the record and the petition should advance to the second stage of the post-conviction process.

III. Different Trial Judge on Remand

Defendant’s final contention is that a different trial judge should consider this petition on remand.  We take judicial notice that the trial judge has retired from the bench, therefore, a different judge will consider this petition on remand.  See 
In Circuit Court
, Chi. Daily L. Bull., May 23, 2001, at 3 (announcing Judge Bolan’s retirement effective May 31, 2001); 
People v. Davis
, 65 Ill. 2d 157, 165 (1976); see also M. Graham, Cleary & Graham’s Handbook of Illinois Evidence § 202.1, at 56 (6th ed. 1994) (“Although not generally known, matters may be so capable of verification as to be beyond reasonable controversy and hence proper subjects of judicial notice.”)

CONCLUSION

We conclude for the reasons previously discussed that defendant’s petition was not properly dismissed at the first stage of the post-conviction proceeding.  The record does not support the conclusion that defendant’s claims of ineffective assistance of trial and appellate counsel are positively rebutted by the record.  Summary dismissal is not warranted because the petition’s allegations of fact are not frivolous or patently without merit.  725 ILCS 5/122-2.1(a)(2) (West 1998).  Our holding is limited to the specific issue before us as to whether the circuit court erred in dismissing defendant’s petition at the first stage of the post-conviction process.  Therefore, the petition advances to the second stage.  The State will be allowed to file responsive pleadings (725 ILCS 5/122-5 (West 1998)).  At the second stage the circuit court must determine whether the petition and any accompanying documentation make a substantial showing of a constitutional violation.  
Coleman
, 183 Ill. 2d 366, 381 (1998).  If a substantial showing is not made, the petition is dismissed.  If a substantial showing of a constitutional violation is made, then the petition advances to the third stage, where the circuit court conducts an evidentiary hearing.  725 ILCS 5/122-6 (West 1998); 
Gaultney
, 174 Ill. 2d at 418.  We note that if the trial court dismisses the petition or denies post-conviction relief at any stage, the defendant may appeal.

The recommendation of Justice Fitzgerald in his special concurring opinion to 
People v. Edwards
 will well serve the trial bench and bar who struggle on a daily basis with balancing justice and judicial economy when interpreting and complying with the pleading requirements for first-stage post-conviction petitions:

“Where doubt exists regarding dismissal at the first stage, the trial court should not hesitate to allow the claim to proceed to the second stage, where counsel may amend the petition and craft a more proper pleading for the court’s review.  If the petition is dismissed at the second stage of the proceedings, a reviewing court is presented with more adequately pleaded facts.  Conversely, if the defendant is granted an evidentiary hearing, the defendant will obtain that which by law is his right.  At present, this solution serves both the ends of justice and judicial economy.”  
Edwards
, 197 Ill. 2d at 270 (Fitzgerald, J., specially concurring).

For the reasons stated above, the judgment of the trial court is reversed and we vacate the dismissal of the post-conviction petition.  The cause is remanded with directions to reinstate defendant’s petition for further consideration under the second stage of the post-conviction proceeding.

Reversed and remanded with directions.

GALLAGHER, P.J., and O’BRIEN, J., concur.