2021 IL App (1st) 182675-U

No. 1-18-2675

Second Division
July 13, 2021

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) ) | Appeal from the Circuit Court of Cook County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 09C660613 |
| WADE COUNCIL, | ) ) | Honorable Michele M. Pitman |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE COBBS delivered the judgment of the court.
Presiding Justice Fitzgerald Smith and Justice Pucinski concurred in the judgment.

**ORDER**

¶ 1   *Held*:   The dismissal of defendant's postconviction petition is reversed where the petition established a substantial showing of ineffective assistance of counsel based on allegations not rebutted by the record.

¶ 2   This appeal arises from the second-stage dismissal of defendant Wade Council's petition for postconviction relief pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2016)). Defendant contends that his petition should not have been dismissed where it

advanced a substantial showing of ineffective assistance of counsel in that his trial counsel erroneously told him that he would forfeit his right to an appeal if he elected a jury trial rather than a bench trial. For the following reasons, we reverse and remand for third stage postconviction proceedings.

¶ 3                                    I. BACKGROUND

¶ 4     In 2009, defendant was charged with criminal sexual assault and criminal sexual abuse. The charges alleged that defendant inserted his tongue into the vagina of the victim, A.M., through the use of force or the threat of force.

¶ 5     Prior to trial, defendant signed a written jury waiver. Defense counsel tendered the waiver to the court and stated that he had "discussed [defendant's] constitutional rights and the impact of waiving jury" with him. The court then admonished defendant as follows:

"THE COURT: Okay. When you signed this, Mr. Council, did you understand, you are waiving or giving up your constitutional right to have a jury trial in your case?

THE DEFENDANT: Yes.

THE COURT: A jury, sir, would consist of 12 people. They would be chosen in part by you and your attorney, Mr. Ward. They would sit in that jury box right there next to you (indicating). They would listen to the evidence in your case, the arguments of these attorneys. I would then instruct them as to the law as it applies in your case. After hearing your entire trial, a jury would decide if the State has, in fact, proven you guilty beyond a reasonable doubt.

Do you understand what a jury is and what it does, Mr. Council?

THE DEFENDANT: Yes.

THE COURT: Is it you desire, sir, to waive your right to a jury trial in your case?

THE DEFENDANT: Yes.

THE COURT: You have discussed that with your attorney?

THE DEFENDANT: Yes, I did.

THE COURT: The Court finds that the Defendant has knowingly and voluntarily waived his right to a jury trial. I will accept his jury waiver in that it is knowingly and intelligently done. The Court will make this jury waiver a permanent part of this record. It is accepted by this Court."

¶ 6    The following evidence was produced at defendant's bench trial.

¶ 7    A.M. testified that on March 17, 2009, which was approximately three weeks after her 18th birthday, she was living in an apartment building in Riverdale, Illinois. Defendant and his family lived in a unit on the floor above hers. She knew defendant only as the stepfather of her friend, Niaysha Fuller.

¶ 8    On that day, A.M. went to Niaysha's apartment to retrieve a hat she had left there the previous day. Defendant answered the door and allowed A.M. into Niyasha's bedroom to get the hat. As she turned to leave, defendant blocked A.M.'s path with his body and told her that he "couldn't wait until [she] turned 18." A.M. tried to leave, but defendant grabbed her by the arm and pushed her into his bedroom and onto his bed. He then held her down with his legs and one arm while removing her sweatpants and underwear with the other arm. As they struggled, defendant stuck his tongue into her vagina. A.M. screamed for him to stop and to let her go. After a few seconds, she freed one of her legs and "kick[ed] him in his genital area." She then got up, pulled up her pants, and ran towards the door. Defendant ran and blocked the front door. He repeatedly told her to "[c]alm down" and "[j]ust don't tell nobody." Defendant eventually allowed

A.M. to leave, at which point she returned to her apartment and called (1) defendant's wife, (2) the police, (3) her mother, and (4) her ex-girlfriend. When the police arrived, A.M. spoke to them and then was taken to the hospital in an ambulance.

¶ 9     Assistant State's Attorney Patrick Turnock testified that he interviewed defendant at the Riverdale police station around 6 p.m. on March 18, 2009. After speaking to Turnock, defendant agreed to have their conversation memorialized in a handwritten statement. Turnock wrote out the statement, which defendant reviewed and revised before signing.

¶ 10    According to the statement, A.M. knocked on defendant's door around 2:50 p.m. on March 17, 2009, and stated that she left something in Niaysha's room. After A.M. retrieved the item and exited Niayasha's room, defendant met her in the hallway that connected the apartment's two bedrooms. Defendant asked A.M. if he could perform oral sex on her. A.M. said no and tried to leave the apartment, but defendant blocked her path. He then grabbed her wrist and pulled her toward his bedroom while A.M. "was pushing back" and "trying not to go into [his] room." Inside defendant's bedroom, A.M. fell backwards onto defendant's bed. He removed her pants and "licked her vagina a couple of times" while she was "pushing [his] head away." After licking her vagina, defendant stopped and "kept telling her [he] was sorry." A.M. got redressed and left.

¶ 11    Defendant's statement also explained that he "wasn't trying to be mean to [A.M.]" but was "just trying to be smooth" and "went about it the wrong way." Defendant further explained that he "did this because [A.M.] is gay, and [he] wanted to see if [he] could make her change her mind."

¶ 12    The trial court found defendant guilty of criminal sexual assault but not guilty of criminal sexual abuse. Following a hearing, the trial court merged the counts of criminal sexual assault and sentenced defendant to 10 years in prison.

¶ 13　This court affirmed defendant's sentence on direct appeal over his contentions that the trial court considered an improper sentencing factor and imposed an excessive sentence. *People v. Council*, 2013 IL App (1st) 120121-U.

¶ 14　On April 28, 2015, defendant filed a *pro se* petition for postconviction relief under the Act, raising various theories of ineffective assistance of trial and appellate counsels. The petition advanced to the second stage of proceedings, where postconviction counsel was appointed. Postconviction counsel then filed an amended petition, arguing, as relevant here, that trial counsel was ineffective because he erroneously told defendant that electing a jury trial would forfeit the right to an appeal.

¶ 15　On May 25, 2018, the State filed a motion to dismiss the amended petition. Following a hearing, the circuit court granted the State's motion, opining that defendant's claim of being misinformed about his appeal rights was "certainly not substantiated by the record." Rather, the court noted that defendant never asked for a jury trial or made any comment during the several occasions in which it was stated that the matter was continued for a bench trial. The court further noted that defendant was admonished on waiving his jury rights in open court.

¶ 16　This appeal followed.

¶ 17　　　　　　　　　　　　　　　II. ANALYSIS

¶ 18　On appeal, defendant's sole contention is that he made a substantial showing of a constitutional violation based on his claim that he only waived his right to a jury because trial counsel told him he would not be able to appeal a conviction if he elected a jury trial.

¶ 19　The Act provides a three-stage procedure in which a criminal defendant may challenge a conviction by alleging that it was the result of a substantial denial of his constitutional rights. *People v. Lesley*, 2018 IL 122100, ¶ 31. At the first stage, a defendant typically files a *pro se*

petition for relief, and the circuit court must determine whether the petition is "frivolous or is patently without merit." 725 ILCS 5/122-2.1(a)(2) (West 2014). If, as here, the petition advances to the second stage, the defendant must meet the higher burden of establishing a "substantial showing" of a constitutional violation. *People v. Domagala*, 2013 IL 113688, ¶ 33. In determining whether the defendant has made the requisite showing at the second stage, a court may not engage in fact-finding or credibility determinations. *Id.* ¶ 35. Instead, the court must take all well-pleaded factual allegations as true, unless "affirmatively refuted" by the record. *Id.* The credibility of allegations not positively rebutted by the record can be resolved only after a third-stage evidentiary hearing. *People v. Sanders*, 2016 IL 118123, ¶ 42. Our review of a second-stage dismissal of a postconviction petition is *de novo*. *Id.* ¶ 31.

¶ 20    Claims of ineffective assistance of counsel are evaluated under the two-prong test established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). *People v. Lamar*, 2015 IL App (1st) 130542, ¶ 15. Where a defendant's claim of ineffective assistance involves a challenge to a jury waiver, the defendant must show that (1) his counsel's advice on whether to waive the right to a jury fell below an objective standard of reasonableness, and (2) he would not have waived his jury rights in the absence of the alleged deficient advice. *People v. Simon*, 2014 IL App (1st) 130567, ¶ 73.

¶ 21    A defendant's right to a jury trial in a criminal case is fundamental. *People v. Kuntu*, 188 Ill. 2d 157, 161 (1999). Although the decision on whether to choose a bench trial or a jury trial belongs to the defendant alone, counsel is expected to adequately inform and advise his client on the choice. *People v. Simon*, 2014 IL App (1st) 130567, ¶ 74. Usurpation of a defendant's right to elect a jury trial may amount to ineffective assistance of counsel. *People v. Townsend*, 2020 IL App (1st) 171024, ¶ 43.

¶ 22   Additionally, a waiver of a defendant's right to a jury is valid only if it is executed in open court and done knowingly, understandingly, and voluntarily. 725 ILCS 5/103-6 (West 2010); *People v. Bracey*, 213 Ill. 2d 265, 269-70 (2004). There is no specific admonishment that a trial court must provide before accepting a jury waiver; the effectiveness of a defendant's waiver depends on the facts and circumstances of each case. *People v. Bannister*, 232 Ill. 2d 52, 66 (2008). The question of whether a defendant knowingly waived his right to a jury trial is reviewed *de novo*. *Bracey*, 213 Ill. 2d at 270.

¶ 23   In this case, defendant alleges that his trial counsel told him that he would be unable to appeal a conviction if he elected a jury trial over a bench trial, advice which, of course, is inaccurate as a matter of law. Consequently, the crux of defendant's argument on appeal is that his decision to waive his jury rights was not made knowingly or understandingly because the choice was tainted by deficient advice from counsel.

¶ 24   The State makes two arguments in response. First, the State asserts that defendant's allegations about his conversations with counsel "were nothing more than conclusory, self-serving statements" that were required to be supported by corroborating evidence such as an affidavit from counsel or an explanation why the same was unavailable. Second, the State contends that defendant's allegations were nevertheless positively rebutted by the record where defendant was silent on numerous occasions in which the trial court indicated the case was set for a bench trial and where defendant was admonished by the court and executed a signed jury waiver.

¶ 25   Regarding the State's argument about corroborating evidence, the State is correct that the Act provides that a postconviction petition must "clearly set forth the respects in which [the defendant's] constitutional rights were violated" and "shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."

See 725 ILCS 5/122-2 (West 2010). However, our supreme court has refused to interpret this provision as requiring an affidavit or explanation for the lack thereof in every case. *People v. Dupree*, 2018 IL 122307, ¶ 32. Instead, our supreme court has held that "[t]he only requirement is that the supporting evidence sufficiently demonstrate the alleged constitutional deprivation." *Id.*

¶ 26 Here, defendant's allegations are not mere conclusory statements, but specific allegations of fact about conversations to which he claims he was a party. As previously noted, we must liberally construe these allegations and take them as true at this stage unless they are positively rebutted by the record. *Sanders*, 2016 IL 118123, ¶ 31. Thus, defendant's allegations are sufficient for us to determine whether he has pled a substantial showing of a constitutional violation, which is all that the Act requires.

¶ 27 Turning to whether the allegations are positively rebutted by the record, the State is again correct that defendant never protested on the record to having bench trial and executed a signed jury waiver after being admonished by the trial court. However, nothing about defendant's silence or the substance of the trial court's admonishments rebuts defendant's allegations about being misinformed by the trial counsel. For instance, if defendant's allegations are true, it would not be surprising for him to express a desire for a bench trial, since he was erroneously made to believe that a bench trial was the only way to preserve his ability to appeal a conviction. See *Townsend*, 2020 IL App (1st) 171024, ¶ 36 (the defendant's silence when a jury trial was indicated did not rebut his allegations that his counsel erroneously told him that he did not have the option of waiving his jury rights).

¶ 28 Further, nothing in the trial court's admonishments shows that defendant knew he could still appeal even if he chose not to waive his right to a jury. Rather, the admonishments established only that defendant had discussed the matter with counsel and understood that a jury would mean

that there would be 12 people who would decide his guilt. This is not inconsistent with defendant's claim that his counsel misinformed him about the effect of a jury on his posttrial right to appeal. *People v. Smith*, 326 Ill. App. 3d 831 848-49 (2001) (jury waiver and admonishments did not rebut the defendant's allegations that counsel advised him to elect a bench trial because the trial judge "owed him a favor" and would have information not available to the jury). We also note that this is not a case in which the defendant had a lengthy criminal history. Had the record shown that defendant had numerous prior convictions or, indeed, had appealed from a conviction following a jury trial, then the record might have arguably rebutted his allegation that he was mislead by counsel's bad advice. See *People v. Reed*, 2016 IL App (1st) 140498, ¶ 7 (reviewing courts may consider the defendant's prior interactions with the justice system in determining whether a jury waiver was made knowingly). However, that is not the case here, as the record does not show that defendant had any significant prior experience in the criminal justice system.

¶ 29    Finally, *People v. Knapp*, 2020 IL 124992, cited by the State, does not dictate a different result. There, the defendant alleged that counsel provided ineffective assistance by advising him that he could not testify without extrinsic corroborating evidence, which counsel also failed to inform him existed. *Id.* ¶ 34. Our supreme court upheld the summary dismissal of the defendant's petition, finding that the record positively rebutted the allegations where, after the purported conversations with trial counsel, the trial court admonished the defendant that " 'the right to testify is a decision that you and you alone have the right to make[.]' " *Id.* ¶ 53. Thus, the record showed that, regardless of any deficient advice from counsel, the defendant was aware that he alone controlled whether he would testify. *Id.*

¶ 30    Here, in contrast, the trial court's admonishments did not inform defendant of the information he allegedly lacked, namely that demanding a jury trial would have no impact on his ability to appeal a conviction. *Knapp* is therefore distinguishable.

¶ 31    In short, defendant's postconviction petition has advanced the requisite showing of deficient performance by counsel based on counsel's alleged advice given outside of the record. As defendant's allegations about these conversations are not positively rebutted by the record, we must take them as true at this stage of postconviction proceedings. Defendant has also pled prejudice, as he claimed that he told counsel that he wanted a jury trial, but changed his mind only because of counsel's misinformation. Accordingly, defendant's petition has made a substantial showing of ineffective assistance of counsel, and we remand for a third stage evidentiary hearing at which defendant will have an opportunity to prove his allegations.

¶ 32                                    III. CONCLUSION

¶ 33    For the reasons stated, we reverse the judgment of the circuit court and remand for further postconviction proceedings.

¶ 34    Reversed and remanded.