2023 IL App (1st) 210844-U
No. 1-21-0844

FIRST DIVISION
February 14, 2023

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 11 CR 20340 |
| | ) | |
| ELEBERT FOX, | ) | |
| | ) | The Honorable |
| Defendant-Appellant. | ) | Diane L. Kenworthy, |
| | ) | Judge Presiding. |

JUSTICE PUCINSKI delivered the judgment of the court.
Justices Hyman and Coghlan concur in the judgment.

**ORDER**

¶ 1    *Held:* We affirm the postconviction court's decision to summarily dismiss defendant's *pro se* postconviction petition where the defendant's claim is that his trial counsel provided ineffective assistance of trial counsel by threatening him into waiving his constitutional right to a jury trial.

¶ 2    Defendant appeals the first-stage dismissal of his *pro se* postconviction petition in which he alleged, *inter alia*, that his trial counsel was ineffective when counsel coerced him into waiving his right to a jury trial by threatening to abandon him unless he took a bench trial. While defendant acknowledges that he signed a written jury waiver and was questioned by the trial court regarding

his decision, he argues that this record is positively rebutted because "the trial court was put on alert" by defendant's response when defendant answered affirmatively to the question as to whether he was threatened or promised anything to make him to choose a bench trial. Alternatively, defendant argues that his appellate counsel was ineffective for failing to raise this issue on direct appeal.

¶ 3     This case arose when defendant was originally charged with multiple counts of first degree murder in the shooting death of Webster Gater, attempt first degree murder and aggravated battery with a firearm for the shooting of Twan Fox, as well as unlawful use or possession of a weapon by a felon. After a bench trial before the Honorable Nicholas Ford, the trial court found defendant guilty of eight counts of first degree murder, one count of aggravated battery with a firearm, and two counts of unlawful use or possession of a weapon by a felon. The trial court sentenced defendant to a total of 90 years' imprisonment, consisting of consecutive sentences of 50 years' imprisonment for first degree murder, 30 years' imprisonment for personally discharging a weapon that proximately caused the death of Webster Gater, and 10 years' imprisonment for aggravated battery with a firearm. The trial court also sentenced defendant to a concurrent sentence of 10 years' imprisonment for unlawful use or possession of a weapon by a felon.

¶ 4     In response, the State argues that the postconviction court's decision to summarily dismiss defendant's *pro se* postconviction petition was proper where defendant did not establish that his trial counsel was ineffective because the record refutes defendant's allegation that he involuntarily waived his right to a jury trial. The State relies upon the trial court's oral admonishments to defendant, his signed, written jury waiver, as well as the pre-trial discussions between defense counsel. We agree and affirm the postconviction court's decision to summarily dismiss defendant's postconviction petition.

¶ 5                                    BACKGROUND

¶ 6        Defendant's conviction stems from a shooting that took place during the early morning hours of October 29, 2011, which led to the death of Webster Gater and injured Twan Fox. Defendant pointed a gun at Twan, shot him three times in the leg, and ran through the gangway. Defendant heard someone scream behind him, which startled him, so he turned around, fired his gun again at Gater, and ran. Gater died from a gunshot wound to the head. After the shooting, Twan was treated for three gunshot wounds and was diagnosed with a paralyzed foot. A .357 caliber semiautomatic handgun was recovered from the sidewalk in the gangway. A DNA expert testified that defendant's DNA could not be excluded from the DNA profile identified on the recovered handgun.

¶ 7        Prior to trial, defendant was originally represented by an assistant public defender, but then private counsel filed an appearance to represent him. Subsequently, during a pre-trial status hearing, the trial court asked defense counsel if defendant sought "Bench or jury[,]" and defense counsel stated, "Bench." During a subsequent hearing, in which the parties were discussing the merits of the State's motion to admit other crimes evidence, defense counsel asked the trial court to rule on this motion at the time of the trial, stating, "That's fine, Judge, just let me say this; we've already told you this is going to be a bench trial…" The circuit court stated that, "…I will table that ruling until I actually hear the evidence, if it's a bench trial, I will make a ruling following that evidence of whether or not and you can make your objection" and "[s]et it down for bench trial today, whatever date that's convenient…"

¶ 8        On April 14, 2014, before defendant's trial began, he signed a written jury waiver form, which was tendered to the circuit court. The written jury waiver form stated that "I, the undersigned, do hereby waive the jury trial and submit the above entitled cause to the Court for hearing." At that

same time, the following colloquy occurred between the trial court, defense counsel and defendant:[1]

"THE COURT: [Defendant], I am told you wanted to proceed with what's called a bench trial, is that right?

THE DEFENDANT: Yes.

THE COURT: At a bench trial I decide your guilt or innocence based upon my review beyond a reasonable doubt. The decision will be mine and mine alone to make. Do you understand that?

THE DEFENDANT: Yes.

THE COURT: When you take a bench trial you give up your absolute right to trial by jury where a group of your peers would decide your guilt or innocence based on their review of the evidence beyond a reasonable doubt. Any decision they make would have to be unanimous, meaning they would all have to agree. Do you understand by taking a bench trial you are giving up your right to a jury trial?

THE DEFENDANT: Yes.

THE COURT: Did anyone threaten you or promise you anything in order to make you choose a bench trial?

THE DEFENDANT: No, Sir.

THE COURT: You are choosing a bench trial of your own free will?

THE DEFENDANT: Yes.

THE COURT: And that's after talking about it with your attorney?

THE DEFENDANT: Yes.

---

[1] Without objection by defendant, during the pendency of this appeal, we granted the State's request to file a corrected Report of Proceeding for this colloquy after discovering a scrivener's error. In the original transcript, defendant responded "Yes" when he as asked if anyone threatened him or promised him anything in order to make him choose a bench trial.

THE COURT: I find this man had made a knowing and intelligent and voluntary waiver of his right to a trial by jury. I accept the jury waiver in writing. When you signed that [defendant], you are telling me in writing, 'I want you, Judge Ford, to decide my case'?

THE DEFENDANT: Yes."

¶ 9 After the bench trial, the trial court found defendant guilty of eight counts of first degree murder, one count of aggravated battery with a firearm, and two counts of unlawful use or possession of a weapon by a felon. The trial court sentenced him to a total of 90 years' imprisonment.

¶ 10 On direct appeal, defendant exclusively challenged the propriety of his sentence. In particular, defendant argued that his conviction for aggravated battery with a firearm should be vacated because it constituted a lesser-included offense of the felony-murder offenses, and that all but one of his first degree murder convictions should be vacated. On June 17, 2017, we determined that all first degree murder counts should merge, and the sentencing order should reflect a single conviction and sentence for first degree murder, and we also affirmed defendant's aggravated battery conviction. The cause was remanded for correction of the mittimus. *People v. Fox*, 2017 IL App (1st) 143966-U.

¶ 11 On May 16, 2017, defendant filed a petition for post-judgement relief pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2022)). He argued that his convictions were void as they were based upon a public act which violated the single subject rule. The trial court dismissed the petition. On January 7, 2019, the United States Supreme Court denied defendant's writ of *certiorari*. *Fox v. Illinois*, 2019 U.S. LEXIS 133.

¶ 12 In March of 2021, defendant filed a petition for leave to file a late postconviction petition. In his petition and in his attached affidavit, dated March 3, 2021, defendant made several allegations surrounding the waiver of his right to a jury trial. He included allegations that his trial counsel was

ineffective, his appellate counsel was ineffective, along with trial court error. Specifically, he alleged that his trial counsel was ineffective, and the trial court abused its discretion, when neither of them advised him of his right to a jury trial. According to defendant, counsel never advised him of his right to a trial by jury, and the trial court never informed him of his right, but only told him of the "consequences" behind taking a bench trial. Defendant averred that "he would have insisted upon a jury trial had he known he had the right to choose a trial by jury because defendant heard from other inmates in the Cook County Jail, that [the trial court] was a biased Judge."

¶ 13        Defendant further alleged that his trial counsel was ineffective when counsel "threatened" him to take a bench trial instead of a jury trial. He averred that his defense counsel told him that if he proceeded with a jury trial, counsel "will not fight for defendant's freedom." In further support of his claim, defendant relied upon the original version of the trial transcript before it was corrected and argued that the record revealed that he responded "Yes," when the trial court asked him if anyone promised or threatened him to choose a bench trial.

¶ 14        Defendant also alleged that the trial court abused its discretion when it "failed to engage in an adequate colloquy" regarding the voluntariness of defendant's jury trial waiver after defendant informed the trial court his decision was based upon threats. Defendant argued that, had the trial court inquired further, it would have learned that defense counsel did not advise him of his right to a jury trial and, instead, "threatened" defendant to take a bench trial or counsel "[would] not fight for defendant's freedom." As to these claims, defendant also alleged that his appellate counsel was ineffective for failing to raise these issues on direct appeal.

¶ 15        In defendant's affidavit, he averred, in pertinent part:

> "3. At no time prior to trial did my trial attorney [] advise me of my right to a jury
> trial. Instead, [trial counsel] advised me to waive a jury and take a bench trial. [Trial

counsel] threatened me by saying that if I took a jury trial, that [he] will not fight for my freedom.

4. If [trial counsel] would have advised me of my right to a jury trial I would have taken a jury trial because when I was in the Cook County Jail, the inmates there talked about Judge Ford's biasedness [sic]."

¶ 16    On June 8, 2021, the Honorable Diane Kenworthy issued a written order summarily dismissing defendant's postconviction petition. Initially, the postconviction court found that defendant's claims were barred by waiver when he failed to raise them on direct appeal. As to the substantive issues, the postconviction court found that defendant was "duly admonished by the court" regarding his waiver of his right to a jury trial. The postconviction court "decline[d] to conclude" that defendant's waiver of his right to a jury trial was unknowing or involuntary where his claim amounted to defense counsel providing advice to defendant as to the most beneficial way to proceed and therefore, amounted to trial strategy. As to defendant's claim that the trial court abused its discretion relating his reply of "Yes" to the trial court's question as to whether anyone had promised him or threatened him to take a bench trial, the postconviction court found that there was no abuse of discretion based upon a review of the entire colloquy between the trial court and defendant.

¶ 17                                              ANALYSIS

¶ 18    At the outset, we recognize that, on appeal, defendant exclusively challenges the postconviction court's decision to summarily dismiss his *pro se* postconviction petition allegation of ineffectiveness of his trial counsel when trial counsel allegedly threatened to abandon him unless he took a bench trial, thereby making his decision to waive his right to a jury trial involuntary. He also argues that his appellate counsel was ineffective for failing to raise this claim

on direct appeal. In his opening brief, in contending that his waiver of his right to a jury trial was involuntary, defendant argues that his allegation that his trial counsel told him that he would no longer "fight for [defendant's] freedom" unless he agreed to a bench trial, was not positively rebutted by the record. In doing so, he relies upon the original trial transcript showing that defendant responded affirmatively when asked by the circuit court whether "anyone threatened or promised him anything in order to make him choose a bench trial[.]"

¶ 19     However, the State subsequently submitted a corrected copy of that colloquy between defendant and the circuit court showing that defendant responded, "No, sir" to the question as to whether anyone had threatened or promised him anything in order to make him choose a bench trial. The State pointed to the discussion that occurred between the trial court, defense counsel, and defendant when the trial court accepted defendant's written jury waiver, the fact that defendant executed a signed, written jury waiver, as well as the two status dates in which defense counsel and the trial court discussed, in defendant's presence, that defendant would be seeking to proceed with a bench trial. Thus, the State argued that defendant could not establish that his trial counsel's performance was arguably deficient because the trial record positively rebutted his claim that his trial counsel threatened to abandon him unless he took a bench trial.

¶ 20     In his reply brief, defendant acknowledges the change in the transcript – showing that he informed the trial court that no one had threatened or promised him to get him to waive his right to a jury trial – and continues to argue the record does not positively rebut his claim. According to defendant, the record did not positively rebut his claim because the admonishments showed that he admitted that he spoke with his trial counsel about the waiver of his right to a jury trial, and "[t]he record is still silent as to why he waived his right to a jury trial and the substance of his conversation with his attorney."

¶ 21        Defendant's challenge on appeal involves the summary dismissal of his *pro se* postconviction petition. The Post-Conviction Hearing Act (Act) provides a procedural mechanism through which a defendant may assert a substantial denial of his constitutional rights in the proceedings which resulted in his conviction. 725 ILCS 5/122-1 *et seq.* (West 2018). At the first stage of postconviction proceedings, the circuit court must determine whether the defendant's postconviction petition is "'frivolous or is patently without merit.'" *People v. Boykins*, 2017 IL 121365, ¶ 9 (quoting 725 ILCS 5/122-2.1(a)(2) (West 2014)). The circuit court may only summarily dismiss a petition as frivolous or patently without merit where the petition "has no arguable basis either in law or fact." *People v. Hodges*, 234 Ill.2d 1, 16 (2009). A petition has "no arguable basis either in law or in fact" where it is "based on an indisputably meritless legal theory or a fanciful factual allegation." *Id.* "An example of an indisputably meritless legal theory is one that is completely contradicted by the record," and "[f]anciful factual allegations include those that are fantastic or delusional." (Internal quotation marks omitted.) *People v. White*, 2014 IL App (1st) 130007, ¶ 18. During first stage postconviction proceedings, "the courts treat allegations of fact as true so long as those allegations are not affirmatively rebutted by the record." (Internal quotation marks omitted.) *Id.* We review *de novo* the summary dismissal of a postconviction petition. *People v. Tate*, 2012 IL 112214, ¶ 10. The trial court's judgment is considered, not the reasons cited, and that judgment may be affirmed on any basis supported by the record if the judgment is correct. *People v. Lee*, 344 Ill.App.3d 851, 853 (1st Dist. 2003).

¶ 22        Defendant argues that his trial counsel was ineffective surrounding defendant's decision to waive his right to a jury trial. Defendants have a constitutional right to the effective assistance of counsel at trial and on direct appeal under the United States Constitution and the Illinois Constitution. *People v. Jackson*, 205 Ill.2d 247, 258-59 (2001); U.S. Const., amends. VI, XIV;

Ill.Const. 1970, art. I § 8. Under the *Strickland* standard, "[t]o prevail on a claim of ineffective assistance of counsel, a defendant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defendant." *People v. Cathey*, 2012 IL 111746, ¶ 23 (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). Specifically, the defendant must demonstrate "that counsel's performance was objectively unreasonable under prevailing professional norms and that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *People v. Domagala*, 2013 IL 113688, ¶ 36. During first-stage proceedings, "a defendant need only show that he can arguably meet those two standards, *i.e.*, it is *arguable* that his counsel was deficient, and it is *arguable* that the outcome of his case would have been different absent the deficient representation." *Id.* (Emphasis in original.) It is well-established that "the *Strickland* standard applies equally to claims concerning trial and appellate counsel. *People v. Petranko*, 237 Ill.2d 490, 497 (2010).

¶ 23    Both the United States Constitution and the Illinois Constitution guarantee a criminal defendant the right to a trial by jury. *People v. Bannister*, 232 Ill.2d 52, 65 (2008). That right includes the right to waive a trial by jury. *Id.* Section 103-6 of the Code of Criminal Procedure provides that every person accused of a crime has the right to a jury trial unless that right is "understandingly waived by the defendant in open court." 725 ILCS 5/103-6 (West 2016). The ultimate decision of whether to waive a jury trial, and thus proceed to a bench trial, belongs solely to the defendant. *People v. Ramey*, 152 Ill.2d 41, 54 (1992) ("[T]hree decisions are ultimately for the defendant in the criminal case after full consultation with his attorney: what plea to enter; whether to waive a jury trial; and whether to testify in his behalf."); *People v. McCarter*, 385

Ill.App.3d 919, 943 (2008) ("[T]he prerogative to choose a bench trial over a jury trial belongs to the defendant and not to his counsel."); *People v. Holley*, 377 Ill.App.3d 809, 813 (3rd Dist. 2007).

¶ 24    For a jury waiver to be valid, the defendant must understandingly waive his right to a jury trial in that the waiver is both knowing and voluntarily. *People v. West*, 2017 IL App (1st) 143632, ¶ 10 (citing *People v. Tooles*, 177 Ill.2d 462, 468 (1997). Here, defendant signed a written jury waiver which is one means by which a defendant may waive his right to a jury trial, but a written waiver is not conclusively a valid waiver. *People v. Bracey*, 213 Ill.2d 265, 269 (2004). The determination of the validity of a waiver depends on the facts and circumstances of a particular case. *Bracey*, 213 Ill.2d at 269. A court need not give any specific admonishment or advice for a waiver to be effective, and there is no precise formula to apply to determine whether a jury waiver is valid. *Id*. "In essence, for a jury waiver to be effective, the trial court must ensure that the defendant knows that the facts of his case would be determined by a judge and not a jury and the resulting consequences of that decision." *West*, 2017 IL App (1st) 143632, ¶ 10 (citing *People v. Bannister*, 232 Ill.2d 52, 69 (2008). Thus, a jury waiver is generally valid where the defense counsel waives that right in open court and the defendant does not object to the waiver. *Bracey*, 213 Ill.2d at 270.

¶ 25    Thus, we review defendant's jury waiver in this case based on whether the record reflects the waiver was made voluntarily, thereby positively rebutting defendant's allegation that trial counsel caused him to waive a jury trial by threatening to abandon his representation if defendant did not proceed with a bench trial. *People v. Knapp*, 2020 IL 124992, ¶ 50 (if the postconviction allegations are affirmatively rebutted by the record on appeal, the claims can be construed as frivolous, and the court can dismiss the petition). Here, the State does not dispute defendant's argument that, if not positively rebutted by the record, would amount to deficient performance by

trial counsel under the first prong of *Strickland* analysis. Moreover, the State does not dispute that defendant has sufficiently alleged facts to establish the prejudice prong of *Strickland* analysis.

¶ 26    We agree with the State that defendant's own words at the time that he acknowledged that he was voluntarily waiving his right to a jury trial, together with his signature on his jury waiver, contradict his postconviction claim that he waived his right to a jury trial in reliance upon his trial counsel's threat to only represent him if he chose a bench trial. Even taking defendant's allegations as true and construing them liberally (*People v. Allen*, 2015 IL 113135, ¶ 25), the alleged off-the-record conversation with counsel on defendant's right to a jury trial occurred before the trial court's admonishments. After the trial court's admonishments, defendant confirmed on the record that no one had threatened or promised him anything in order to make him choose a bench trial. In addition to the oral admonishments, defendant also executed a written jury waiver.

¶ 27    While we agree that the record shows that defendant voluntarily waived his right to a jury trial, we also acknowledge how difficult it is for a defendant, standing next to his or her attorney, to tell the court if they have been threatened or intimidated by their counsel. The problem is exacerbated by the concern that a trial court cannot ask about these conversations without opening the door to waiver of attorney-client privilege.  In addition, we recognize that a trial court need not give any specific admonishment or advice for a waiver to be effective *(Bracey*, 213 Ill.2d at 269), however, we encourage trial courts, before accepting a written jury waiver, to admonish defendants so that they understand the role and function of the judge and jury, the consequences of his or her choice, and that this decision belongs to the defendant alone. We emphasize that a defendant's right to a jury trial is fundamental. U.S. Const., amends. VI, XIV; Ill. Const. 1970, art. I, §§ 8, 13. Because of its importance, the trial court has an independent duty to ensure that defendant's waiver is voluntary and knowing. *Bannister*, 232 Ill.2d at 66. Moreover, while "a written jury waiver merely

memorializes the defendant's decision," (*Bannister*, 232 Ill.2d at 66), a more comprehensive written jury waiver than the one used in this case, as well as other cases, could provide more specific context to the assist defendants in making a fully informed decision as to whether they should waive their right to a jury trial.

¶ 28    In so holding, we consider the cases cited by the parties in support of their positions. For instance, we find that defendant's reliance on *People v. Smith*, 326 Ill.App.3d 831 (1st Dist. 2001), is misplaced. In *Smith*, the defendant alleged in his postconviction petition that his attorney told him that he should take a bench trial because the judge owed him a favor and would have access to information that was unavailable to the jury. *Smith*, 326 Ill.App.3d at 838. The defendant's petition was dismissed at the second stage of postconviction proceedings. The *Smith* court held that the defendant's petition should advance to the third stage of postconviction review upon finding that the defendant's signed jury waiver and the trial court's admonitions when securing the defendant's oral waiver did not rebut the defendant's claim that his counsel pressured him to waive his right to a jury trial. *Id*. at 847-49. Specifically, the *Smith* court noted that when the trial court admonished the defendant regarding his desire to waive the right to a jury trial, "[a]t no time [during those admonitions] did the trial judge ask the defendant whether he had been promised anything in exchange for giving up his right to a jury trial." *Id*. at 848-49.

¶ 29    Thus, in *Smith*, the court found that the record may positively rebut a defendant's claim that his trial counsel threatened him to take a bench trial by looking at whether the trial court asked defendant whether he had been threatened or promised anything in exchange for giving up his right to a jury trial. Building upon the holding in *Smith*, the record here positively rebuts defendant's allegation where the trial court specifically asked defendant whether he had been promised anything or threatened by anyone in exchange for giving up his right to a jury trial.

¶ 30    Both parties also discuss the impact of *People v. Knapp*, 2020 IL 124992, ¶¶ 53-54, a case in which our supreme court found that the defendant's allegations were directly rebutted by the trial court's admonishments. In *Knapp*, the trial court summarily dismissed the defendant's postconviction petition in which he alleged that defense counsel was ineffective for providing "bad advice" on his right to testify. The defendant averred that counsel told him that he could not testify unless there was corroborating evidence to support his testimony. Essentially, the defendant's claim was that his decision to waive his right to testify was not knowingly or voluntary because of defense counsel's bad advice.

¶ 31    In looking at whether the record positively rebuts the defendant's allegation, our Supreme Court found that "the record contains nothing to suggest that petitioner ever alerted the trial court of his desire to testify, that he had any questions about his right to testify, or that he otherwise was unsure about waiving his right to testify." *Knapp*, 2020 IL 124992, ¶ 51 (citing *People v. Smith*, 176 Ill.2d 217 (1997) ("…defendant's waiver of his right to testify is presumed if *** he fails to testify or notify the court of his desire to do so"). However, our Supreme Court found that the "record demonstrates that petitioner not only understood his right to testify but that it was petitioner's decision not to testify" where the circuit court admonished the defendant that his decision to testify was his decision and his alone, after consulting with his attorney, and the defendant immediately confirmed that it was his decision not to testify. *Id*. ¶ 53.

¶ 32    Defendant seeks for us to distinguish *Knapp* on the basis that "the trial court gave no such admonishment that the right to a jury trial was [defendant's] alone." While true, following *Smith*, we find that the defendant's allegation that his decision to waive his right to a jury trial was involuntary was positively rebutted by the trial court's admonishments as to whether anyone had promised him anything or threatened him in making his decision to waive his jury trial. *Smith*. 326

Ill.App.3d at 848-49. Notably, in *Knapp*, the trial court never asked the defendant whether he had received any threats or promises regarding this decision. *Knapp*, 2020 IL 124992, ¶ 26. Therefore, in *Knapp*, the court merely looked at other admonishments to determine whether a defendant's claim of an involuntary waiver was positively rebutted by the record.

¶ 33    Recently, and after the parties filed their briefs, we issued the decision in *People v. Rouse*, 2022 IL App (1st) 210761. In *Rouse*, the defendant's allegations surrounded whether his decision to waive his right to a jury trial was made knowingly. Specifically, he alleged that his trial counsel was ineffective when counsel "prevented" him from exercising his right to a jury trial because of an off-the-record conversation. *Rouse*, 2022 IL App (1st) 210761, ¶ 17. The defendant alleged that he decided to waive his right to a jury trial after counsel told him that he should "take a bench trial." *Id*. ¶ 17. When the defendant told trial counsel that he believed a guilty verdict after a bench trial would be harder to appeal, trial counsel told him that his belief was a myth and that "if [the defendant] did not take a bench trial, she would withdraw from representing him." *Id*. The defendant further alleged that the trial court's admonishments did not make clear that he could have told the court about counsel telling him that she would withdraw and that he "took trial counsel's admonishments to heart because he had 'a brief criminal history [and had] never been to trial before." *Id*.

¶ 34    Here, defendant's contention does not surround whether he knowingly waived his right to a jury trial, and instead, concerns whether he voluntarily waived this right. Specifically, in *Rouse*, we found that the defendant "does not allege that counsel 'threatened' him; rather he alleges that he did not know that he could go over his counsel's head and choose a jury trial when she insisted on a bench trial." *Id*. ¶ 39. Because defendant's allegation in the instant case surrounds whether he

voluntarily waived his right to a jury trial, as opposed to whether he knowingly waived that right, the holding in *Rouse* is distinguishable.

¶ 35    In defendant's reply brief, after he acknowledged the correction to the trial transcript, he argued that the record does not positively rebut his claim because "[t]he record is still silent as to why he waived his right to a jury trial and the substance of his conversation with his attorney." Notably, he does not cite to any case in which a court has required an explanation for why a defendant chose to waive his right to a jury, and we decline to find that the record must specifically explain why a defendant choose to waive his right to a jury trial in order for a reviewing court to find that the record positively rebuts a defendant's allegation.

¶ 36    Regarding his argument that, to find that the record positively rebuts a defendant's allegation, the record must specifically rebut the actual substance of the conversation, we find no support for this claim. For instance, in *Smith* and in *Knapp*, the courts only looked at whether the record, specifically the admonishments, showed that defendant was asked if he had been promised/threatened by anyone in evaluating the record and did not look at the issue in terms of whether the specific out-of-court statement was positively rebutted. *Smith*, 326 Ill.App.3d at 848-49; *Knapp*, 2020 IL 124992, ¶ 53. Defendant's suggestion also ignores that this claim concerns an out-of-court statement made to defendant and therefore not be part of the record on appeal unless defendant or his trial counsel informed the trial court of its existence.

¶ 37    Moreover, he cites to *People v. McGee*, 2021 IL App (2d) 190040, ¶ 38 (citing *People v. Simms*, 2021 IL App (1st) 161067-B), for the proposition that "[c]ontradictions between the defendant's averments and the trial evidence are not enough" to establish that the record is positively rebutted. In *McGee*, the defendant's appeal involved a claim that his trial counsel failed to convey a plea offer before the time that the offer had expired. *McGee*, 2021 IL App (2d) 190040,

¶ 35. Thus, *McGee* did not involve the issue presented or the facts of the instant case where there existed oral admonishments by the trial court in which the defendant acknowledged his understanding of his right to waive a bench trial.

¶ 38    Because we find no merit to this claim, we similarly find no merit to defendant's claim that appellate counsel was ineffective for failing to raise the same issue on direct appeal. *People v. Enis*, 194 Ill.2d 361, 388 ("A defendant suffers no prejudice from appellate counsel's failure to raise an issue on direct appeal where the underlying issue is not meritorious."). Furthermore, this claim was based on evidence outside the trial record, meaning that appellate counsel could not have brought the claims in the first instance. See *People v. Youngblood*, 389 Ill.App.3d 209, 214 (2d Dist. 2009) (nothing that matters outside the record may not be raised on direct appeal).

¶ 39    In sum, we find that there was no arguable basis to defendant's postconviction claim that his trial counsel was ineffective when trial counsel allegedly threatened to abandon him unless he took a bench trial, thereby making his decision to waive his right to a jury trial involuntary. Finding no merit to this contention, we likewise find that there is no arguable basis for defendant's claim that his appellate counsel was ineffective for failing to raise this issue on direct appeal. Therefore, we find that defendant failed to set forth the gist of a constitutional claim that satisfied the low threshold for pleading a claim at the first stage of postconviction proceedings. Accordingly, we affirm the trial court's summary dismissal of defendant's postconviction petition.

¶ 40                                    CONCLUSION

¶ 41    For the foregoing reasons, we affirm the judgment of the circuit court.

¶ 42    Affirmed.