2025 IL App (1st) 232193-U

SECOND DIVISION
March 18, 2025

No. 1-23-2193

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST JUDICIAL DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 14 CR 21903 |
| | ) | |
| EVERETT HARRIS, | ) | Honorable |
| | ) | Marc Martin, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HOWSE delivered the judgment of the court.
Presiding Justice Van Tine and Justice Ellis concurred in the judgment.

ORDER

¶ 1     *Held*:   We affirm the judgment of the circuit court of Cook County dismissing defendant's claim of ineffectiveness of counsel at the second stage of postconviction proceedings based on defendant's right to testify because the petition failed to make a substantial showing of prejudice from not testifying; we affirm the judgment denying defendant's postconviction claim of ineffective assistance based on denial of defendant's right to a bench trial after a third stage evidentiary hearing because defendant failed to establish by a preponderance of the evidence that trial counsel coerced defendant to elect a jury trial.

¶ 2     In February 2016 the circuit court of Cook County convicted defendant, Everett Harris, of two counts of attempt (first degree murder), two counts of aggravated battery with a firearm (later merged into the convictions for attempt (first degree murder)), two counts of aggravated kidnapping, one count of aggravated discharge of a firearm, and one count of aggravated vehicular hijacking. This court affirmed all of defendant's convictions and sentence on direct

appeal. *People v. Harris*, 2020 IL App (1st) 161818-U. In December 2020 defendant filed a petition for postconviction relief based on two allegations of ineffective assistance of counsel. Defendant argued (1) trial counsel denied defendant of the right to testify at trial despite defendant's desire to do so and (2) trial counsel coerced defendant into having a jury trial rather than a bench trial despite defendant's alleged desire for a bench trial. The petition advanced to second-stage proceedings. The trial court granted the State's motion to dismiss the petition as to defendant's claim he was denied the right to testify. Following an evidentiary hearing, the trial court denied defendant's claim counsel deprived him of the right to a bench trial.

¶ 3    For the following reasons, we affirm.

¶ 4                                    BACKGROUND

¶ 5    We provided a detailed recitation of the evidence leading to defendant's convictions in the direct appeal. *Harris*, 2020 IL App (1st) 161818-U. For purposes of this appeal we need only state a very brief summary to provide context for defendant's claim that (1) defendant wanted to testify (2) at a bench trial.

¶ 6    In November 2013 defendant had been in an "on-again, off-again" romantic relationship with Samantha Santos that was, at the time of the offense, "off." On November 13, 2014, after a verbal altercation with Santos in Santos's car (that allegedly became physical) defendant drove off with Santos's two minor children in the backseat. Left behind, Santos called the police. A police officer arrived, interviewed Santos, and they drove around the area looking for Santos's car. The officer and Santos failed to locate defendant or the car and Santos returned home, where Santos met up with various friends and family. Through a series of phone calls from defendant, Santos learned defendant was at a local shopping mall. Santos's family and friends converged on one mall in two vehicles but failed to locate defendant. While driving to a second mall, Santos

spotted her car and she and a family friend followed it to where defendant parked at the second mall. A second car with members of Santos's family and another family friend joined them. The two vehicles parked in front of and behind Santos's car, blocking defendant from being able to leave. Santos approached the driver's side of the car armed with a hammer and struck defendant once or twice. The male friend who had been driving Santos pulled Santos out of the way and tried to pull defendant from the vehicle. Defendant shot him. Santos eventually ran to the front of the car where a second male friend from the second vehicle was standing. Santos pushed him to the ground. While they were on the ground, defendant, who had by then exited the vehicle, kicked Santos and the second male friend repeatedly while trying to clear a jam of his gun. Defendant cleared the gun and shot at Santos and the second male, striking Santos multiple times. Defendant got into the vehicle parked behind Santos's car (which belonged to the first male friend whom defendant shot) and drove away. Defendant was apprehended a short time later after a brief car chase by police.

¶ 7     Defendant did not testify at trial. After trial, the jury found defendant not guilty of the attempt (first degree murder) of the second male friend at the front of the car, guilty of attempt (first degree murder) of Santos and the male friend who pulled her away from defendant and was shot (and guilty of aggravated battery with a firearm of them both which was merged with attempt (first degree murder)), guilty of aggravated kidnapping of Santos's two children (both under 13-years old), guilty of aggravated discharge of a firearm, and guilty of aggravated vehicular hijacking. The trial court sentenced defendant to an aggregate term of 98 years' imprisonment in the Illinois Department of Corrections. On December 23, 2020, defendant, represented by counsel, filed a petition for postconviction relief. The petition claimed that (1) "Trial counsel was ineffective for overcoming [defendant's] desire to have a bench trial (where

[defendant] believed he had a better chance of explaining his self-defense to the Judge) and coercing [defendant] into having a jury trial decide the matter;" and (2) "[Defendant] was denied his right to testify and avers that he wanted to testify to self-defense. *** Trial counsel was ineffective for not calling [defendant] to the stand in order to accomplish that purpose."

¶ 8    In support of the first claim the petition only alleged that the Illinois constitution protects defendant's right to elect a bench trial and that where a defendant's trial counsel usurps a defendant's right to waive a jury trial prejudice is presumed if there is a reasonable probability the defendant would have waived a jury trial absent the alleged error. In support of the second claim the petition alleged that if called to testify defendant would have "stated under oath that at no time was he kidnapping anyone, that the mother of the children knew where [they] were at all times, and, when he was pulled from the vehicle by persons unknown at the mall, he *brandished* a weapon to defend himself." (Emphasis added.) Defendant's affidavit is attached to the petition. In it, defendant averred that had he "known," defendant would not have waived his right to a bench trial. Defendant avers that his trial attorneys knew defendant wanted a bench trial to explain his case to the judge, and that his attorneys told him "it would be better for twelve jurors to decide my case instead of one person." Defendant also averred that one of his attorneys, Assistant Public Defender (APD) Rosales, told defendant "that if I testified in my own defense and was found guilty, the judge would discredit everything I said and [the judge] would give me more time for testifying." Defendant averred that because of that statement, "when the judge asked me if I wanted to testify I said I didn't because I didn't want to get more time." The affidavit states what defendant allegedly would have testified to in his defense if called.

¶ 9    The State filed a motion to dismiss defendant's postconviction petition. Following a hearing on the motion, the trial court granted the motion to dismiss in part and denied the motion

in part. The court granted the State's motion to dismiss the ineffective assistance of counsel based on the right to testify claim. The court found that the trial court admonished defendant on his right to testify and that defendant "related he understood he had an absolute right to testify and that nobody could take that away." The court found that when asked, defendant informed the trial court that defendant would rather not testify, and the court "specifically found that [defendant] has knowingly and voluntarily made an intelligent choice and decided not to testify." The court found that the record belies defendant's averment that defendant "informed the court he did not want to get more time. What the record shows is [defendant] said he would rather not testify." The court also found that defendant did not voice hesitancy or confusion about not testifying. The court denied the motion to dismiss the "ineffective assistance of counsel slash wavier of the right to a bench trial claim." The court found that there was a factual issue on that claim that cannot be resolved at the second stage. The court advanced the bench trial claim to the third stage.

¶ 10     Defendant testified at the third-stage evidentiary hearing. Defendant testified that he wanted a bench trial and that APD Rosales's response to that was that "she recommended that I don't have a bench trial and that I have a jury because it's better for me to have a jury; and if I was to decide to have a bench, she will not represent me." Defendant testified that after his attorney's response he again stated that "I have to do a bench because it would be better" because defendant "felt that I needed to explain myself at [*sic*] the judge and not the jury." Defendant testified he told APD Rosales he wanted a bench trial twice: once when they met at the county jail and a second time at the courthouse on the day of trial. When defendant told his attorney in the lock up at the courthouse that defendant wanted a bench trial the attorney allegedly responded "by saying that she will remove herself off my case and that it will be better

for me to have the jurors as 12 of them and one judge; and if I do decide to do a bench, the judge will find me guilty and give me more time." On cross-examination defendant testified that he knew the difference between a bench trial and a jury trial but he did not "go against" his attorney because "I needed her." When asked if the attorney told defendant that defendant could decide to have a bench trial, defendant testified, "If I do decide, she would not represent me; and I couldn't chance that." When asked if defendant said anything to the trial court when the jury trial commenced about wanting a bench trial, defendant testified, "I didn't go against her [(defendant's attorney,)] no ***." Defendant admitted that "at no time throughout the trial [or after the trial] did [defendant] ever personally tell the judge [that he] wanted a bench trial." On redirect examination defendant testified he did not think it would be appropriate to "speak out and say what [he] wanted" because he had a lawyer representing him. Defendant could not recall whether anything was said about a bench trial while in court, but during the evidentiary hearing the trial judge in this case stated that, "nobody said anything about a bench trial."

¶ 11    Defendant did not provide any further evidence. The State moved for a directed verdict and the trial court denied the motion.

¶ 12    Both defendant's trial counsels testified at the third-stage evidentiary hearing. APD Morales testified that it was her practice to inform clients that they have the right to decide whether to testify and whether they would like a bench trial or a jury trial. Morales explained to defendant what a bench trial was and what a jury trial was and that it was his right to choose what kind of trial. Morales testified that "[defendant] indicated that he wished to have a jury trial." Morales did not recall making a recommendation as to the type of trial but testified that she "would have advised [defendant] as to the options" and that doing so was her general practice with clients. Morales testified that she never stated that she would not be defendant's

lawyer if defendant chose a bench trial and APD Morales has never said that to a client as far as she could remember. APD Morales testified that she did not observe any type of cognitive delays or mental health issues that would cause defendant difficulty in understanding APD Morales's explanation, and she "never felt that there was a time that [defendant] did not understand our conversations." APD Morales testified that defendant chose to have a jury trial after consulting with his family. On cross-examination APD Morales testified that the defense of the case was self-defense and she did not call defendant to testify. APD Morales confirmed that defendant never told her that he wanted a bench trial. They discussed what type of trial defendant would have more than once, in multiple locations, because "clients can always change their minds." APD Morales testified that defendant did not change his mind.

¶ 13    APD Naranjo, the second chair public defender assigned to defendant's case, also testified at the evidentiary hearing. Naranjo met with defendant and Morales before trial began. APD Naranjo testified that it was his belief that defendant decided to have a jury trial with counsels' advice. APD Naranjo testified that Morales did not say to defendant that Morales would not be defendant's attorney if defendant chose to have a bench trial. Naranjo had no recollection of defendant and Morales stating or arguing over what kind of trial to have, neither before nor during the course of the trial. APD Naranjo never had any reservations about defendant's ability to understand his right to a bench or jury trial and testified that defendant "was very active in his representation."

¶ 14    The trial court asked APD Naranjo whether assistant public defenders get to choose their clients and whether clients have the right to change public defenders. In both situations neither has that choice. APDs do not have an option to withdraw from a case if there is something that makes it difficult for the APD to participate. On cross-examination, APD Naranjo testified that

"probably before every court date leading up to trial, we would talk about what [defendant] wanted to do. So we would have that discussion pretty regularly *** [to confirm what defendant wanted to do in terms of a trial.]" Naranjo testified that there was never any doubt about which way defendant wanted to go. APD Naranjo testified that once assigned a case, he has to handle that case whether he likes it or not. Naranjo was not aware of any instance in which a co-worker made a threat to be taken off of a case because they could not work with a client because they did not like a decision the client made.

¶ 15    The parties did not present any further evidence. During argument, when asked by the trial court, defendant's attorney conceded that the court is not required to admonish the defendant and obtain a waiver of a bench trial but it is the suggested practice to do so. Following arguments, the trial court took the matter under advisement. At the next court date the trial court orally ruled on the petition. The trial court stated that the "case presents a credibility dispute." The court stated:

> "Based on demeanor while testifying, the Court finds [defendant's] testimony lacked credibility. On the other hand, the testimony of Ms. Rosales and Mr. Naranjo, which this Court independently evaluates, was clear and credible. *** Ms. Rosales and Mr. Naranjo each credibly testified that [defendant] wanted a jury trial.
>
> The Court finds that neither lawyer coerced [defendant] into entering a jury trial. ***
>
> Moreover, the trial record in this case contains no interjection by the defendant that he wanted a bench trial."

The court cited *People v Powell*, 281 Ill. App. 3d 68 (1996), for the proposition that a defendant who wishes a bench trial instead of a jury trial must make their position known to the trial court when their attorney fails to do so. The court in this case found that,

"At no time during the jury selection *** did the defendant interject or question why the process was occurring when he wanted a bench trial.

When the trial court personally addressed [defendant] about waiving the right to testify, [defendant] did not say words to the effect of yes, I would rather not testify; but I don't understand why this is a jury trial.

In addition, [defendant] did not ever voice that he really wanted a bench trial in his post-trial motions or as part of the pre-sentence report or at any other time post-trial that would have prompted a hearing pursuant to *People vs. Krankel*."

¶ 16    The trial court denied the petition for postconviction relief.

¶ 17    This appeal followed.

¶ 18                                    ANALYSIS

¶ 19    This is an appeal from an order granting, in part, the State's motion to dismiss a postconviction petition and an order denying postconviction relief after an evidentiary hearing. The Post-Conviction Hearing Act (Act) provides a three-stage process "by which a defendant may challenge [their] conviction for substantial deprivation of federal or state constitutional rights." (Internal quotation marks omitted.) *People v. Barkes*, 399 Ill. App. 3d 980, 985 (2010). A claim of ineffective assistance of counsel is cognizable under the Act. See *People v. Rosado*, 2016 IL App (1st) 140826, ¶ 42 ("a petition asserting ineffective assistance of counsel may not

properly be summarily dismissed if it is arguable (1) counsel's performance fell below an objective standard of reasonableness and (2) defendant was prejudiced.").

> "Typically, review of a claim of ineffective assistance of counsel involves a mixed question of law and fact. [Citation.] When addressing such a claim, we defer to the court's findings of fact and will disturb them only if they are against the manifest weight of the evidence, but we review *de novo* the court's ultimate determination of whether counsel rendered ineffective assistance." *People v. Velasco*, 2018 IL App (1st) 161683, ¶ 137.

¶ 20 At the second stage of postconviction proceedings, a petition may be dismissed when the allegations in the petition, "liberally construed in light of the trial record, fail to make a substantial showing of a constitutional violation." *Barkes*, 399 Ill. App. 3d at 986. "In determining whether to grant an evidentiary hearing, all well-pleaded facts in the petition and in any accompanying affidavits are taken as true. [Citation.] *** Dismissal of a petition at the second stage *** is reviewed *de novo.*" *Barkes*, 399 Ill. App. 3d at 986. "A petition that is not dismissed at the first or second stage advances to the third stage, at which an evidentiary hearing is held." *Barkes*, 399 Ill. App. 3d at 986.

> "[A]t a third-stage evidentiary hearing, the defendant must show, by a preponderance of the evidence, a substantial violation of a constitutional right. [Citation.] The circuit court *** acts as the finder of fact at the evidentiary hearing, resolving any conflicts in the evidence and determining the credibility of witnesses and the weight to be given particular testimony. [Citation.] When a petition is advanced to a third-stage evidentiary hearing, where fact finding and credibility determinations are involved, we will not reverse a circuit court's

decision unless it is manifestly erroneous. [Citations.]" *People v. Williams*, 2017 IL App (1st) 152021, ¶ 22 (citing *People v. Hughes*, 329 Ill. App. 3d 322, 325 (2002) (a ruling is manifestly erroneous only if it contains error that is clearly evident, plain, and indisputable)).

¶ 21                    Ineffectiveness of Counsel-Right to Testify at Trial

¶ 22    The trial court granted the State's second-stage motion to dismiss defendant's claim of ineffective assistance of counsel based on defendant's right to testify at trial.

"The decision whether to testify on one's own behalf belongs to the defendant [citation], although this decision should be made with the advice of counsel [citation]. Advice not to testify is a matter of trial strategy and does not constitute ineffective assistance of counsel unless evidence suggests that counsel refused to allow the defendant to testify. [Citation.]

A defendant making a postconviction claim that trial counsel was ineffective for refusing to allow the defendant to testify must allege that he 'made a "contemporaneous assertion *** of his right to testify." ' [Citations.] Further, a defendant must 'show prejudice from the denial of his right to testify in order to make out a claim of ineffective assistance of counsel.' [Citation.]" *Barkes*, 399 Ill. App. 3d at 989 (quoting *People v. Youngblood*, 389 Ill. App. 3d 209, 217 (2009) (quoting *People v. Brown*, 54 Ill. 2d 21, 24 (1973))).

Specifically, "[i]n *Brown,* the supreme court required only that the defendant inform his attorney, rather than the trial court, of his desire to testify. [Citation.]" *Youngblood*, 389 Ill. App. 3d at 217-18 (citing *Brown,* 54 Ill. 2d at 24).

¶ 23    On appeal in this case, defendant argues that the petition and supporting affidavit "allege specific statements by [defendant's] trial counsel *** that caused [defendant] to decline to testify." Defendant argues that, pursuant to *Barkes*, defendant "does not have to provide an in-court outburst in order to protect his constitutional rights." In *Barkes*, the appellate court found that the "defendant did allege that he told counsel that he wanted to testify" but "failed to satisfy the prejudice prong of *Strickland*" because defendant's affidavit stating what defendant's testimony would have been did not refute "the central issues in the case." *Barkes*, 399 Ill. App. 3d at 989-90. Defendant argues that in dismissing this claim the trial court erroneously relied on the fact defendant "was admonished about [the] right to testify" and defendant "recorded no in-court objection," to conclude that defendant "cannot show that his attorney coerced him to give up that right."

¶ 24    We agree that pursuant to the authorities cited above a defendant attempting to state a claim of ineffective assistance of counsel based on their attorney's alleged denial of the defendant's right to testify need only allege that the defendant informed their attorney of their desire to testify. However, defendant does not strictly argue that trial counsel denied defendant's right to testify after defendant requested to testify, but that *trial counsel's advice* allegedly "coerced" defendant not to testify. The specific advice defendant complains of is his counsel's alleged statement that if defendant testified, "the judge would discredit everything [defendant] said and [the trial judge] would give me more time for testifying." We also note that, contrary to the trial court's finding, defendant did not allege defendant told the trial court at defendant's criminal trial that defendant did not want to testify because defendant did not want to get "more time;" the allegation is that the *reason* defendant told the trial court defendant chose not to testify was that defendant did not want to get more time. The State argues that the statement by trial

counsel "would have constituted reasonable trial strategy" as representing counsel's "opinion regarding a possible consequence of testifying." That opinion is not necessarily erroneous. "In general, it is permissible for a court to consider its perception of the defendant's perjury in fixing the penalty to be imposed." *People v. Ralon*, 211 Ill. App. 3d 927, 960 (1991). Regardless, we find that defendant has failed to make a substantial showing of prejudice and affirm the trial court's judgment on that ground. *People v. Hernandez*, 351 Ill. App. 3d 28, 39 (2004) ("Notwithstanding its characterization of a defendant's right to choose whether to testify as a fundamental right, our supreme court nevertheless requires that a defendant satisfy the prejudice component of the *Strickland* analysis ***. *** [O]nce it is clear that no prejudice is established, the examination of the first prong of the *Strickland* test, namely, whether the performance of the counsel was deficient, is not required. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, *** that course should be followed." (Internal quotation marks and citations omitted.)). "[W]e may affirm the trial court's decision on any valid basis that appears in the record." *Youngblood*, 389 Ill. App. 3d at 213.

¶ 25    Prejudice, in this context, means a reasonable probability that the result of the proceeding would have been different had defendant testified. *Townsend*, 2020 IL App (1st) 171024, ¶ 23 ("Satisfying the prejudice prong necessitates a showing of actual prejudice, not simply speculation that defendant may have been prejudiced. [Citation.] Additionally, a 'reasonable probability' is defined as a showing sufficient to undermine confidence in the outcome, rendering the result unreliable or fundamentally unfair." (Internal quotation marks omitted.)), *Youngblood*, 389 Ill. App. 3d at 218-19. Defendant is convicted of attempt (first degree murder), aggravated kidnapping, aggravated discharge of a firearm, and aggravated vehicular hijacking. "A person commits the offense of kidnapping when he or she knowingly *** and secretly

confines another against his or her will. *** Confinement of a child under the age of 13 years *** is against that child's *** will within the meaning of this Section if that confinement is without the consent of that child's *** parent or legal guardian." 720 ILCS 5/10-1(a)(1), 10-1(b) (West 2014). "A person commits the offense of aggravated kidnaping when he or she commits kidnapping and *** takes as his or her victim a child under the age of 13 years." 720 ILCS 5/10-2(a)(2) (West 2014). "Aggravated kidnapping is a forcible felony." Kidnapping and related offenses, Trial Handbook for Illinois Lawyers-Criminal Sentencing § 7:3, 720 ILCS 5/2-8 (West 2014).

> "(a) A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent imminent death or great bodily harm to himself or another, or the commission of a forcible felony." 720 ILCS 5/7-1(a) (West 2014).

"The justification described in the preceding Sections of this Article is not available to a person who *** [i]s attempting to commit, committing, or escaping after the commission of, a forcible felony." 720 ILCS 5/7-4(a) (West 2014).

¶ 26    The petition and affidavit claim that had defendant testified, defendant would have denied kidnapping Santos's children, defendant told Santos where he was taking her children, that when he parked Santos's car and was exiting the vehicle something swung toward him and someone was "attacking me," that while defendant was being "pulled on by my pants" and "jumped on," defendant reached his gun. Then, "[a]fter the shooting I panic [*sic*] got into a van

\*\*\* and drove off." Defendant's affidavit admits that at the start of the incident Santos exited the vehicle after an argument between defendant and Santos "got heated." The petition claims that defendant "brandished a weapon to defend himself." The petition does not say anything about firing the weapon. The affidavit only admits "the shooting," implicitly the shooting when defendant was confronted at the car door, and either says nothing about the second shooting or fails to discern or state what defendant would have testified to regarding the first and second shootings.

¶ 27     Defendant's claim that defendant would have testified that he immediately called Santos and told her that defendant was going to the mall is in apparent refutation of the "secret confinement" element of aggravated kidnapping. "The combined term 'secret confinement' can be shown by proof of the secrecy of the confinement or the secrecy of the place of the confinement. [Citation.] Also, 'secret confinement can be shown through evidence that the defendant isolated the victim from meaningful contact with the public.' [Citation.]" *People v. Gaines*, 2020 IL App (2d) 180217, ¶ 58 (citing *People v. Gonzalez*, 239 Ill. 2d 471, 480 (2011)). The *Gonzalez* court found:

> "confinement is secret where it 'serves to isolate or insulate the victim from
> meaningful contact or communication with the public, that is, when the
> confinement is in a place or in a manner which makes it unlikely that members of
> the public will know or learn of the victim's unwilling confinement within a
> reasonable period of time.' 3 Wayne R. LaFave, Substantive Criminal Law §
> 18.1(c), at 17 (2d ed. 2003)." *Gonzalez*, 239 Ill. 2d at 480.

¶ 28     In *Gaines*, the court separately considered whether "the defendant's conduct isolated the victim from meaningful contact with the public" and "whether the alleged confinement was kept

- 15 -

secret from the person most likely to be affected by it," the victim's father. *Gaines*, 2020 IL App (2d) 180217, ¶ 64. Either, independently, was sufficient to establish the secret confinement element. See *Gaines*, 2020 IL App (2d) 180217, ¶¶ 64-68 (noting that "no one who saw [the victim] knew that [the defendant] did not have permission to take [the victim] for the day"). The *Gaines* court found that the fact the defendant lied to the victim's father about the victim's location, combined with the fact that other adults at the location where the victim was kept did not know the father was looking for the child, "*supports* the jury's finding that [the] defendant knowingly and secretly confined" the victim. (Emphasis added.) *Gaines*, 2020 IL App (2d) 180217, ¶ 66. In other words, "secret confinement" is proved if the evidence establishes that the fact the victims are *confined*—meaning imprisoned, restrained, or enclosed "within something, most commonly a structure or an automobile" (*Gaines*, 2020 IL App (1st) 180217, ¶ 58 (quoting *Gonzalez*, 239 Ill. 2d at 479, *People v. Siguenza-Brito*, 235 Ill. 2d 213, 227 (2009)))—is kept secret regardless of who knows their physical location, including their parent.

¶ 29    Defendant's proposed testimony fails to refute the "secret confinement" element of the offense and neither the petition nor the affidavit alleges any proposed testimony challenging any other element of the offense. Defendant does not refute the evidence that Santos's children were confined in the car in a manner to "isolate or insulate the victim[s] from meaningful contact or communication with the public" or that the confinement was in a manner which made it "unlikely that members of the public will know or learn of the victim's unwilling confinement within a reasonable period of time." *Gonzalez*, 239 Ill. 2d at 480. Defendant's affidavit implicitly admits defendant drove away in the vehicle after Santos "jumped out of the car" and no one saw defendant with the children until Santos and her family friends confronted defendant in the mall parking lot. The affidavit does not aver that Santos gave defendant permission to drive off with

her vehicle or her children—only that defendant called Santos immediately and "told her I was headed to the mall." Furthermore, the evidence that Santos did not consent to defendant driving away with her children in her car and did not know where defendant was with her children was overwhelming. See, *e.g.*, *People v. Everhart*, 405 Ill. App. 3d 687, 697 (2010) (where the defendant argued that counsel was ineffective for failing to fulfill promise in opening statement that the defendant would testify, finding, "[w]e need not reach the question of whether trial counsel's performance was deficient because we conclude that defendant failed to show prejudice such that the result of the proceeding would have been different. Here, the State's evidence was overwhelming."). The evidence established that Santos called police and they then combed the neighborhood looking for defendant, and that Santos and her family went to two different malls to look for defendant based on cryptic statements by Santos's children during phone calls with defendant, only locating them by chance driving down the street in route to the second mall. See *Harris*, 2020 IL App (1st) 161818-U, ¶¶ 8-9.

¶ 30    Taking the allegations in the petition and affidavit as true, defendant failed to make a substantial showing that there is a reasonable probability the outcome of defendant's trial on the charge of aggravated kidnapping would have been different had defendant testified as alleged. Since defendant was committing a forcible felony he was not entitled to a defense of self-defense. 720 ILCS 5/7-4(a) (West 2014). Even if defendant could assert self-defense, defendant's alleged testimony is insufficient to establish the defense. The affidavit admits "the shooting." Defendant did not aver that when "something came swinging toward my face" that defendant actually was hit. Defendant does not aver that the second male victim posed a threat of an imminent use of force against defendant or that defendant reasonably believed that deadly force against the second victim was necessary. Defendant does not aver that defendant fired at

anyone to defend himself against being attacked or "jumped on," or that he reasonably believed that shooting the alleged attackers was necessary to prevent imminent great bodily harm or the commission of a forcible felony.

¶ 31    We find that defendant has failed to make a substantial showing of a claim of ineffective assistance based on counsel's allegedly coercing defendant not to testify because defendant has failed to make a substantial showing of prejudice from the fact defendant did not testify. *People v. Madej*, 177 Ill. 2d 116, 147 (1997) ("In view of the compelling nature of the foregoing evidence, defendant cannot demonstrate that he suffered prejudice from his attorney's alleged coercion to testify. As a result, the circuit court did not err in dismissing the claim of ineffective assistance of counsel on this ground [without an evidentiary hearing."]). The trial court's judgment dismissing defendant's claim of ineffective assistance based on the right to testify is, therefore, affirmed.

¶ 32                    Ineffective Assistance of Counsel-Right to Bench Trial

¶ 33    The trial court denied defendant's claim of ineffective assistance of counsel based on defendant's right to a bench trial after a third-stage evidentiary hearing.

"Under the Illinois constitution, an accused has the right to waive trial by jury. [Citation.] *** [T]he prerogative to choose a bench trial over a jury trial belongs to the defendant and not to his counsel. [Citation.]

Where the defendant's ineffectiveness claim is based on counsel's refusal to allow the defendant to waive a jury trial, prejudice under *Strickland* is presumed if there is a reasonable probability that the defendant would have waived a jury trial in the absence of the alleged error. [Citation.] [T]he fact that the outcome of the case might have been the same if defendant had received a

bench trial is not relevant to the question of prejudice under *Strickland*.

[Citation.]" *Barkes*, 399 Ill. App. 3d at 988.

¶ 34    On appeal, defendant argues that the trial court erroneously relied on "the absence of any outburst by [defendant] after being admonished about his rights either for a bench trial or to testify." Defendant argues the "holding in *Barkes* is analogous to this case." According to defendant, "[t]he same reason that the instant trial court used to deny the petition ([defendant's] silence at the time of trial admonishments) was the same reason found wanting in *Barkes*." From this we construe defendant to argue that the trial court in this case denied defendant's postconviction petition because defendant failed to "inform the trial court that [defendant] wished to have a bench trial when [defendant's] counsel allegedly failed to do so."

¶ 35    In *Barkes*, the defendant "alleged that he told counsel that he wanted a bench trial but counsel refused." *Barkes*, 399 Ill. App. 3d at 988. Counsel allegedly told the defendant that counsel "was running the show and [the defendant] was getting a jury trial." *Barkes*, 399 Ill. App. 3d at 988. The *Barkes* court held that the defendant was entitled to an evidentiary hearing on his claims: "taking the allegations in [the] defendant's postconviction petition and his supporting affidavit as true, *** defendant is entitled to an evidentiary hearing on this issue." *Barkes*, 399 Ill. App. 3d at 988. *Barkes* is of little help in this case, where an evidentiary hearing was indeed held on defendant's claim of ineffective assistance of counsel.

¶ 36    In *People v. Smith*, 326 Ill. App. 3d 831, 847 (2001), the defendant's postconviction petition claimed that trial counsel was ineffective "for causing [the defendant] to waive his right to a jury trial by advising [the defendant] that a bench trial would be better because the [trial] judge owed trial counsel a favor and the judge would have information not available to a jury." The trial court summarily dismissed the petition as frivolous and patently without merit. *Smith*,

326 Ill. App. 3d at 836. This court found that by allegedly advising the defendant that it would be better to take a bench trial as the defendant claimed, "trial counsel would have been acting in a professionally unreasonable manner." *Smith*, 326 Ill. App. 3d at 848. The court found that "the issue to be determined is whether the advice given [the] defendant prevented [the] defendant from waiving his constitutional right to a jury trial voluntarily, knowingly, and understandingly." *Smith*, 326 Ill. App. 3d at 849. Given the procedural posture of that case, this court advanced the petition to the second-stage of the postconviction process. *Smith*, 326 Ill. App. 3d at 849.

¶ 37    Although not alleged in the petition or affidavit, at the evidentiary hearing held on defendant's claims, defendant testified that defendant's attorney stated that "if I was to decide to have a bench, she will not represent me" and "the judge will find me guilty and give me more time." At the hearing, two of defendant's attorneys testified and refuted making the statements defendant attributed to them in defendant's testimony. After the hearing, the court found defendant's testimony not credible and that the testimony of defendant's trial attorneys refuting making the statements attributed to them by defendant was credible. The court concluded that "neither lawyer coerced [defendant] into electing a jury trial."

¶ 38    Nothing in the trial court's ruling suggests that the absence of an interjection by defendant was the basis of the trial court's ruling. We agree with the State that the fact defendant never alerted the criminal trial court that defendant desired a bench trial merely corroborated defendant's trial attorneys' testimony that defendant chose a bench trial. The trial court's findings that the trial attorneys testified credibly (and defendant did not) and did not coerce defendant to elect a jury trial are not against the manifest weight of the evidence and are sufficient to deny the petition.

¶ 39    "When a petition is advanced to a third-stage evidentiary hearing, where fact-finding and credibility determinations are involved, we will not reverse a circuit court's decision unless it is manifestly erroneous. [Citation.] A circuit court's ruling is manifestly erroneous if it is arbitrary, unreasonable, and not based on the evidence." *People v. Brown*, 2021 IL App (1st) 180991, ¶ 70. The trial court's credibility findings are not manifestly erroneous. "[A] reviewing court owes great deference to a credibility determination made by a trial court after observing a witness's demeanor 'first-hand.' " *People v. Dorsey*, 2023 IL App (1st) 200304, ¶ 114. Here, the trial court stated that it based its credibility findings on the witnesses' "demeanor while testifying." Therefore, the credibility findings were based on the evidence and we do not find them unreasonable. Regardless, defendant makes no argument that the trial court's factual findings or credibility determinations are manifestly erroneous. "When a defendant's challenge to a jury waiver is predicated on a claim of ineffective assistance of counsel, the court must determine: (1) whether counsel's performance fell below an objective standard of reasonableness; and (2) whether there exists a reasonable likelihood that the defendant would not have waived his [bench trial] right in the absence of the alleged error." (Internal quotation marks omitted.) *People v. Batrez*, 334 Ill. App. 3d 772, 782 (2002).

¶ 40    Here, we have no need to address whether defendant proved, by a preponderance of the evidence, that there is a reasonable likelihood that defendant would have elected a bench trial "in the absence of the alleged deficient performance and erroneous advice of trial counsel" because defendant failed to prove, by a preponderance of the evidence, that trial counsel's performance was deficient or that counsel's advice was erroneous. The credible evidence presented at the evidentiary hearing was that it was APD Morales's practice to advise defendants as to the option of a bench or jury trial and that APD Morales never stated that she would not be defendant's

lawyer if defendant chose a bench trial. APD Morales also testified that defendant chose to have a jury trial after consulting with his family. Additionally, APD Naranjo credibly testified that it was his belief that defendant decided to have a jury trial with counsels' advice. APD Naranjo testified that Morales did not say to defendant that Morales would not be defendant's attorney if defendant chose to have a bench trial.

¶ 41    Because the trial court found that defendant's testimony was not credible, and defendant presented no other evidence to support his claim that defendant's trial attorney stated that trial counsel would no longer represent defendant if defendant chose a bench trial or that defendant would receive a longer sentence if he did, and the trial court found that defendant's attorneys testified credibly and that the attorneys did not coerce defendant to take a jury trial, we find that defendant failed to prove, by a preponderance of the evidence, that trial counsel's performance was deficient. The court's finding that defendant failed to prove by a preponderance of the evidence that defendant ever informed defendant's attorneys that defendant wanted a bench trial and, instead, that defendant, on the advice of counsel and consultation with his family, chose to have a jury trial, is not manifestly erroneous. Therefore, the trial court's judgment denying defendant's petition for postconviction relief on this ground is affirmed.

¶ 42                                  CONCLUSION

¶ 43    For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.